THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. GEORGE TRIPPODA, Appellant.

Third Department, February 27, 1973.

*James W. Holtzworth* for appellant.

*Thomas M. Persico, District Attorney,* for respondent.

*Per Curiam.* This is an appeal from a judgment of the County Court of Fulton County, rendered March 11, 1970 upon a verdict convicting defendant of the crimes of arson in the first degree, burglary in the second degree and petit larceny.

On November 14, 1969 Mr. and Mrs. Harry Banovic, who resided at 30 North Street, Gloversville, New York, were home during the noon hour for lunch. The Banovics occupied the first floor apartment, and Mrs. Banovic's 91-year-old mother occupied the second floor apartment of a two-family house. Shortly before 1:00 P.M. Mr. and Mrs. Banovic left their home and Mr. Banovic drove his wife to her place of employment.

A witness testified that at about 2:00 P.M. he delivered a certain warranty card to the Banovic premises and was greeted at the rear door of the Banovic apartment by a man, who represented himself as being a relative of the Banovics from Connecticut and who accepted the warranty card. The witness identified the defendant as being the man he saw on the Banovic premises. Harry Banovic testified that when he returned to his premises at about 2:15 P.M. he observed the defendant walking on his driveway toward the street and that when he entered his premises he had reason to believe that someone had been

inside the house after he had previously left at about 1:00 P.M. Harry Banovic promptly left the premises and spoke to the defendant on the street, asking him what he had been doing at the house, whereupon the defendant replied that Banovic had the wrong man. There was ample evidence from which the jury could find that the defendant had been inside the Banovic apartment without any express permission or authorization from the Banovics.

Harry Banovic testified that from the time he entered and left his house at about 2:15 P.M. until he again returned about 10 minutes would have elapsed. Upon his return he observed that there were smoke and flames coming out of the two downstairs bedroom windows adjoining the driveway, whereupon he promptly went upstairs and removed his mother-in-law from the premises. The local fire station was in the immediate vicinity of the Banovic residence and the fire was reported to it about 2:30 P.M. Another witness testified that at about 2:30 P.M. he observed smoke coming from the Banovic premises to such an extent that it obscured the highway.

At the close of the People's case and again at the close of the defendant's case the defendant moved to dismiss the indictments for failure of proof and other grounds of sufficiency to sustain the charges and such motions were denied.

Upon this appeal we are concerned with whether or not the record contains evidence constituting proof beyond a reasonable doubt to support the convictions. The record contains no direct evidence that any of the crimes charged were actually committed, the proof as to each being entirely circumstantial. The primary issue is whether or not the record contains evidence beyond a reasonable doubt of the corpus delicti of arson, burglary and larceny and for convenience each of such crimes will be treated separately herein.

### I ARSON

In all degrees of arson relating to a fire, there must be proof beyond a reasonable doubt that the fire was directly caused by a human being. (See *People* v. *Reade*, 13 N Y 2d 42, 45.) "In arson cases, proof of criminal agency is, of necessity, more often than not solely circumstantial because, in the very nature of things, the fire generally consumes and destroys all evidence of its incendiary origin." (*People* v. *Reade, supra*, p. 46).

The record contains evidence that the fire started in a walk-in closet situated between the two downstairs bedrooms on the Banovic premises. This was a common closet serving the occupants of both bedrooms. The exterior walls of the closet formed

the interior walls for the bedrooms and a portion of the kitchen, with one wall being the exterior of the house. Expert witnesses established that within the closet the fire started its burning at about 18 inches to 2 feet above the floor level. The experts could discern no evidence of any incendiary devices or chemicals or other direct evidence which would indicate that the fire was deliberately ignited. It was further established that there was nothing about the closet area which would indicate that the fire had been the result of spontaneous combustion or from some natural cause such as lightning. There was no evidence of any open fires or heating apparatus in and about the closet which would explain the fire and upon an inspection of the enclosed house wiring in the closet area there was no causal connection indicated. It was established that none of the occupants of the house utilized cigarettes. Upon the foregoing facts it would appear that the cause and source of the fire were unknown except that by implication the fire must have been ignited by a human agency as there was no apparent other cause of the phenomenon.

However, the residents of the Banovic household testified that within the closet and on or adjacent to the doorframe from the bedroom occupied by Mr. and Mrs. Banovic, there was a pinup lamp attached to the wall by a nail. Electrical current was supplied to this lamp by means of a lead cord attached to a baseboard wall outlet situated in the bedroom of Mr. and Mrs. Banovic, which lead cord ran along the bedroom's baseboard and into the closet to a point along the closet wall where the pinup lamp electrical cord was plugged into it. A portion of the electrical lead cord utilized to supply current to the pinup lamp was retrieved from the debris after the fire and was described as being attached to the bedroom baseboard with one end extending into the closet. The portion of the lead cord with its plug insert end intact and still plugged into a triple outlet device was admitted into evidence as People's Exhibit No. 24. The witnesses established that the end of the lead cord which went into the closet and to which one would ordinarily expect to find attached a plug-in device was destroyed by the fire. It appears from David Banovic's testimony that the destroyed portion of Exhibit No. 24 hung up in the closet. Exhibit No. 24 is about three feet in length—it was originally seven or eight feet long—with the plug being intact and apparently unharmed, the opposite end showing the insulation being badly melted and charred with the two electrical wires being totally exposed and touching at the extreme end for several inches. In its present condition and absent exclusionary evi-

dence, Exhibit No. 24 would present itself as an almost certain logical source of the fire.

The record established that upon arrival at the fire the firemen had some reason to believe that the electrical power was still on and one fireman testified that at about 3:00 P.M. he entered the basement of the premises and removed the fuses from the fuse box putting the same on a shelf or ledge nearby. He inspected the fuse box to satisfy himself that he had then shut off the electrical current from the fuse box to the remainder of the premises. One of the People's expert witnesses was the Battalion Fire Chief who initially responded to the fire alarm and who supervised the fighting of the fire on the premises. This witness was certain that until such time as a fireman had turned off the power, there had been electrical current to the lighting fixtures of the premises and that, accordingly, the fuses had not blown. In his opinion, the electrical extensions to the pinup lamp could not have been the cause of the fire as such arcing and sparks necessary to start a fire would have caused the fuse controlling that circuit to blow and in his opinion there could not have been a blown fuse.

The People's other expert was a person engaged by insurance companies to investigate fires as to the possibility of arson. He apparently had testified before the Grand Jury that a fuse was blown, but at the trial he testified that he had examined the fuses which he found in the location previously described by the fireman who removed said fuses and that none of the fuses were blown. In his opinion Exhibit No. 24 would not indicate that it was a cause of the fire because the wire did not show any sign of being fused or melted together. Of course, a problem is that a substantial portion of Exhibit No. 24 was apparently entirely consumed in the fire. This expert's testimony was based upon a view of the burned area, not as a result of the afternoon fire, but the condition of the premises resulting from the second fire later the same day, as to the cause of which the record is silent. The expert's testimony and conclusions may be capsuled in the following quote from his testimony: "We eliminated accidental and natural causes and malfunction of any wiring or other appliance in the house and when you eliminate these causes, the only other area is that the fire was deliberately set, or arson."

There is evidence that the fire was very intense in the closet area by the time the firemen arrived on the scene. Indeed, Harry Banovic described seeing flames in and about the bedroom windows before the firemen arrived. The record further establishes

that the electricity was not shut off at the fuse box until about 3:00 P.M. or some one-half hour after Harry Banovic observed the fire and it is further established that there were no blown fuses. Upon the present record and the expert testimony it would be impossible for the insulated portions of the electrical extension cord and the pinup lamp to have been melted away without an arcing and a blowing of the appropriate fuse or fuses. However, Exhibit No. 24 and the evidence as to the disintegration of the missing portions of the electrical lead establish that this is precisely what must have happened in this particular case. The only reasonable conclusion upon the record is that there was some inherent fault in the electrical system by virtue of which a fuse did not blow.

The facts established in this case and the expert testimony in regard thereto are insufficient to reasonably exclude the electrical lead furnishing current for the pinup lamp as exposed to the interior wall of the closet as a source of the fire. Either in whole or in part, the circumstantial evidence in regard to the source of the fire is not of such a probative nature as to point with reasonable certainty to an arson.

The indictment should have been dismissed upon the motion of the defendant as to the charge of arson.

### II LARCENY

The indictment charged that on November 14, 1969 the defendant " stole certain personal property belonging to Harry Banovic having an aggregate value of less than $250.00 ". Mrs. Banovic testified that on November 13, 1969, at about 7:00 P.M. she owned a certain pocketbook, which she described, that contained $50 in cash, a bankbook, and a Christmas Club check, and that the pocketbook had been placed by her on a shelf situated upon the common wall between the closet and the kitchen area. She stated that upon the same shelf there were some boxes and that the shelf was some six feet above the level of the floor. As far as Mrs. Banovic knew, her husband was unaware of the money and although she made no search after the fire for the pocketbook, it was not a part of any debris exhibited to her by her sons after the fire. As far as she knows, neither the pocketbook nor any of its contents were found after the fire. Of course, she testified that she made no search of the closet area or the premises after the fire for the pocketbook and it does not appear that she would have any direct knowledge as to whether or not the pocketbook was missing after the fire. The record establishes that about five hours after the firemen left the premises

on the afternoon of November 14, the fire rekindled in and about the upper portions of the closet area causing the firemen to return to the premises at about 9:00 P.M. Various pictures introduced into evidence by the People establish that after the reburning or rekindling of the fire, sometimes referred to in the record as the second fire, the common wall area between the kitchen and the closet was partially destroyed to the extent that you could see directly from the kitchen area into the closet. It seems readily apparent that as a result of the second fire there must have been some debris, even if minor in nature, on the kitchen floor area.

Ronald Banovic and David Banovic testified that at a time subsequent to the fire they returned to the premises and searched the debris in the closet for anything salvageable and specifically for any remains of pocketbooks. They describe the recovery of portions of several pocketbooks, one or two of said pocketbooks apparently being almost entirely intact and one of which contained intact various credit cards and Mrs. Banovic's driver's license. David Banovic testified that he took the remains of all of the pocketbooks to his mother and she testified that none of the pocketbooks or remains were the one described by her as containing the cash and bank objects.

Mrs. Banovic did not testify as to the total number of pocketbooks owned and stored by her in the closet and upon the present record it is unknown as to whether or not all of her pocketbooks were recovered with the exception of the one containing the cash. Furthermore, the record does not establish what the status of the shelves was in the closet after the initial fire fighting, although it is established that after the initial fire there were clothes and other debris on the closet floor. As previously noted, after the second fire or the rekindling of the fire a portion of the wall between the kitchen and the closet was completely burned through and this is the area established by Mrs. Banovic as where the shelf and pocketbook at issue had been situated. The record establishes that as of the time of trial the kitchen and all areas of the downstairs premises had been cleaned of debris. However, the record does not contain any evidence as to who cleaned such debris and as to whether or not there was any search made of such debris for the missing pocketbook.

The present record does not contain probative evidence beyond a reasonable doubt which points with certainty to the fact that the pocketbook and/or its contents were, in fact, missing from the premises after the fire.

Mrs. Banovic further testified that on the day in question there was an unsealed insurance envelope lying upon the top of a washing machine in her kitchen. A few days prior to the fire she had placed in the envelope some insurance papers and/or receipts together with change in the amount of $.65. On the morning of November 15 Mrs. Banovic and her sister went to the premises specifically to recover the insurance envelope and after discovering that it was not lying on the washing machine, they observed the envelope and its paper contents scattered under a desk near the rear door to the premises. The change was not there and as far as Mrs. Banovic knows, the change was never found. The record does not disclose any particular search of the kitchen area which would have reasonably established that the change was or was not missing and, of course, the downstairs premises had been the subject of fire fighting, at least a portion of said fire having burned through the kitchen wall. In the absence of a description of the means or method whereby the kitchen area was cleaned following the fire, the record is insufficient to establish that the change was, in fact, missing on and after the time of the fire.

The burden was upon the People to establish with some certainty that something had, in fact, been stolen or at least was clearly missing after the fire. In this regard the record is inadequate because the People failed to prove facts which as circumstances would support a conclusion beyond a reasonable doubt that the crime of larceny had, in fact, been committed as to the pocketbook or the missing change. It should be noted that the search upon the arrest of the defendant later that evening apparently did not reveal any of the items alleged to be missing from the Banovic premises, including the cash. Furthermore, the defendant was observed quite closely by two witnesses immediately after the supposed larceny and by another witness a few minutes later and none of these witnesses testified as to observing any pocketbook in the possession of the defendant.

The charge of larceny contained in the indictment should have been dismissed upon the motion of the defendant at the conclusion of the evidence.

### III BURGLARY

As noted hereinabove, the defendant was identified as having been inside the Banovic premises on November 14, 1969 and the record establishes that he gave a false reason for his presence inside the building. However, the aggravating factors in section 140.25 of the Penal Law for burglary in the second degree were not proven in the present record. The trial court charged

the lesser included crimes of burglary in the second degree, to wit: burglary in the third degree (Penal Law, § 140.20); criminal trespass in the second degree (Penal Law, § 140.15); criminal trespass in the third degree (Penal Law, § 140.10); and trespass (Penal Law, § 140.05). The trial court charged that as to either the trespass or the burglary crimes there must be an unlawful entering or remaining in the dwellings. It was mentioned in the charge that the entry must be without a license or privilege to enter and the court in its charge expressly characterized the Banovic premises as being the residence of the Banovics. No objections were taken to the charge and the defendant made no request to charge.

Entering or remaining unlawfully is defined in subdivision 5 of section 140.00 of the Penal Law, however, the court did not charge that section. This record contains proof that Harry Banovic had a sign upon the front of the exterior of the premises indicating that a real estate business was conducted there. He further testified that the rear door of the premises was never locked and that his office was in a den to which the rear door afforded immediate access. The record establishes that the real estate business sign did not have any arrow pointing to an office entrance. The intent to commit a crime within premises is immaterial insofar as there is an entry or remaining upon public premises as a general proposition. (See *People* v. *Brown*, 25 N Y 2d 374; *People* v. *Ennis*, 37 A D 2d 573.)

Upon the present record the trial court should have charged the appropriate definition contained in subdivision 5 of section 140.00 of the Penal Law. There was a vague reference by the witness identifying the defendant as having been inside the Banovic premises, that he observed the defendant coming from the kitchen area of the premises.

In sum, upon the present record, the only evidence that the defendant is guilty of the crimes charged in the indictment is the fact that he was unlawfully on the premises of the Banovics. However, even this condition is questionable as Banovic conducted a business on the premises and albeit the statement was made that Banovic did not know the defendant, that does not completely eliminate the fact that the defendant might have been there on business. This part of the trial is somewhat fuzzy because the above section was not charged. As to the remaining crimes charged, there is, of course, no direct proof and there was not, in our opinion, such a nexus to fairly meet the rule of circumstantial evidence, as properly charged by the trial court. The direct evidence that the defendant was on the

premises does not per se give rise to an inference that because of that fact the defendant committed the very serious crimes for which he was convicted. At best, assuming an arson, burglary and larceny, the evidence on the present record leaves the alleged perpetrator of the crimes shrouded in mystery. (*People* v. *Reade*, 13 N Y 2d 42, 46, *supra.*)

Inasmuch as the jury convicted the defendant of arson and larceny, neither of which verdicts can be supported upon this record, it appears that in the interests of justice a new trial should be granted as to the trespass charges instead of exercising the power of this court to reduce the burglary conviction to the appropriate crime proven pursuant to the charge of the trial court.

The judgment should be reversed, on the law and the facts, and the first and third counts of the indictment dismissed and a new trial granted on the second count of the indictment as to the issue of trespass.

HERLIHY, P. J., STALEY, JR., COOKE, KANE and REYNOLDS, JJ., concur.

Judgment reversed, on the law and the facts, and the first and third counts of the indictment dismissed and a new trial granted on the second count of the indictment as to the issue of trespass.