THIRD DEPARTMENT, OCTOBER, 2008

(October 2, 2008)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES RICHARDSON, Appellant. [865 NYS2d 138]—

Peters, J. Appeal from a judgment of the Supreme Court (Lamont, J.), rendered February 15, 2007 in Albany County, upon a verdict convicting defendant of the crimes of arson in the third degree and insurance fraud in the third degree.

Less than two hours after defendant left his home in the City of Albany, a fire was discovered on the second floor. While extinguished relatively quickly, the rear of the building, particularly the kitchen, suffered severe damage. Defendant thereafter notified his insurance company of the loss and, following an investigation of the fire, he was subsequently charged with the crimes of arson in the third degree and insurance fraud in the third degree. Following a jury trial, defendant was convicted as charged and sentenced to an aggregate term of $3^1/_3$ to 10 years in prison. This appeal ensued.

Defendant's primary contention is that his convictions, which rested solely upon circumstantial evidence, are against the weight of the evidence.[1] A determination as to whether the verdict is supported by the weight of the evidence requires us to independently review the evidence and, if a different verdict would not have been unreasonable, to " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]). Upon such review, we do not distinguish between direct and circumstantial evidence (*see People v Cushner*, 46 AD3d 1121, 1123 [2007], *lv denied* 10 NY3d 809 [2008]).

It is undisputed that defendant had sole access to the building. Further, arson investigators Richard Coleman and Thomas Mitchell concluded that the fire had originated in the northwest corner of defendant's kitchen, where a space heater, refrigera-

---

1. While defendant also argues that the evidence was legally insufficient to support his convictions, his general motion to dismiss upon the close of the People's case and again at the close of all proof was insufficient to properly preserve this claim (*see People v Gray*, 86 NY2d 10, 19 [1995]; *People v Salaam*, 46 AD3d 1130, 1131 [2007], *lv denied* 10 NY3d 816 [2008]).

tor, stove, microwave, water cooler and outside light were all plugged into and powered by a single electrical outlet through the use of a power strip. In discerning the source of the blaze, both Coleman and Mitchell testified that they were able to exclude all accidental causes. A subsequent lab report confirmed the presence of a medium petroleum distillate on a portion of the baseboard where the fire originated.

Nonetheless, viewing the evidence in a neutral light, we conclude that defendant's convictions are not supported by the weight of the. evidence (*see People v Bleakley*, 69 NY2d at 495). Notably, both Coleman, who commenced his training as a fire investigator just five months prior to the fire, and Mitchell, the investigator hired by the insurance company, conceded that they were unable to pinpoint the actual cause of the fire. Moreover, and critically, while they had ruled out the possibility of mechanical sources, neither chose to have the majority of appliances inspected, which were grouped together in the northwest corner of the small, compact kitchen. Further, the investigators stated that, upon entering the building, they noticed three tripped circuit breakers—indicating a potential circuit overload—but neglected to determine the source of the breakers' failure or with which appliances they were associated. Rather, Coleman, in excluding the possibility of an electrical fire, relied on the expert report of Stuart Morrison, an engineer specializing in failure analysis. While Morrison examined the space heater, electrical outlet, power strip and the remains of several electrical wires, the fact remains that his report was completed without the benefit of visiting the scene, investigating the tripped circuit breakers or examining the remaining electrical appliances—all of which were in close proximity to the fire's origin. Under these circumstances, we cannot conclude that the expert testimony reasonably excluded the possibility of an electrical fire (*see People v Trippoda*, 40 AD2d 388, 393 [1973]).

Of equal importance, defendant testified that he was in the process of repainting the kitchen at the time of the fire and that he stored a plastic bottle of charcoal lighter fluid, which he used for his charcoal grill, in a box near the space heater.[2] The import of this information became apparent, as both Coleman and Margaret LaFond, a forensic scientist, testified that the portions of the baseboard where the fire originated tested positive for a medium petroleum distillate—examples of which include paint thinner and some brands of charcoal lighter fluid. However, nei-

---

2. Indeed, Coleman testified that, at the time of the fire, there were cans of paint in the kitchen, most if not all of which were ultimately spilled during the course of extinguishing the fire.

ther Coleman nor LaFond identified the specific distillate found on the baseboard and, critically, failed to provide unequivocal testimony excluding paint thinner, turpentines or charcoal lighter fluid as the source of the distillate. Furthermore, and not insignificantly, although Mitchell discovered a burn pattern on the kitchen floor, subsequent testing of those portions of the floor came back negative for the presence of ignitable fluids.

Moreover, the record does not support the inference that defendant had a motive to commit the arson. Although motive is not an element of the crime, it nonetheless cannot be ignored (*see People v Cushner*, 46 AD3d at 1123; *People v Hamilton*, 129 AD2d 859, 862 [1987]). Indeed, where, as here, a case is based entirely upon circumstantial evidence, " 'the motive often becomes not only material but controlling, and in such cases the facts from which it may be inferred must be proved. It cannot be imagined any more than any other circumstance in the case' " (*People v Lewis*, 275 NY 33, 40 [1937], quoting *People v Fitzgerald*, 156 NY 253, 258 [1898]; *see People v Schatz*, 37 AD2d 584, 585 [1971]).

While the evidence established that defendant owed approximately $3,000 in taxes and was often late paying his bills,[3] his financial situation was far from dire (*see Chenango Mutual Ins. Co. v Charles*, 235 AD2d 667, 669 [1997]; *compare People v Grassi*, 92 NY2d 695, 698 [1999]; *People v Cushner*, 46 AD3d at 1123). Defendant owned his home free and clear of any mortgage or other financial encumbrance and, in fact, was in the process of renovating it when the fire occurred (*see People v Lewis*, 275 NY at 41-42). Further, although the dissent correctly states that defendant purchased an increase in insurance about a month before the fire, it fails to acknowledge that his coverage was nonetheless consistent with that of previous policies he had held[4] and, more significantly, was grossly inadequate to the loss sustained (*compare People v Venkatesan*, 295 AD2d 635, 637

---

**3.** The dissent implies that defendant's gas service had been disconnected due to nonpayment, yet the record confirms that service was disconnected *by defendant* due to rising gas prices, as well as the fact that he was spending the majority of his time caring for his ailing mother at her home. Additionally, although defendant was twice threatened with discontinuation of electric service due to nonpayment, he eventually made these payments and service was never disconnected.

**4.** In fact, the proof established that defendant had maintained at least $60,000 of coverage on the building and $40,000 on the contents since 2002. Although he obtained a new policy with $50,000 in structure coverage and no contents coverage after his policy had been cancelled in July 2004, an agent of defendant's insurance company specifically recalled that this was because defendant did not have enough money with him at the time to provide the initial deposit necessary to purchase the coverage that he had previously maintained.

[2002], *lv denied* 99 NY2d 565 [2002], *cert denied* 549 US 854 [2006]; *People v Labar*, 278 AD2d 522, 523 [2000]; *People v Karadimas*, 134 AD2d 952, 952 [1987], *lv denied* 70 NY2d 933 [1987]). Specifically, the value of defendant's personal property lost by the fire exceeded the policy limits by approximately $30,000 and the cost of repairs to the building exceeded his limits by nearly $8,000 according to the insurance company's adjuster and $30,000 according to an adjuster hired by defendant. More tellingly, defendant had not removed any of his personal items from his home prior to the fire (*compare People v Beyor*, 272 AD2d 929, 930 [2000], *lv denied* 95 NY2d 832 [2000]; *People v Flick*, 147 AD2d 957, 957 [1989], *lv denied* 73 NY2d 921 [1989]) and, upon arriving at the scene, he importuned the firefighters to retrieve from his home the flag that had draped his father's casket.

Given the paucity of the proof on the issue of motive, along with the questionable basis for the fire investigators' conclusion that all accidental causes of the fire had been excluded, we cannot conclude that the evidence was " 'of such weight and credibility as to convince us that the jury was justified in finding the defendant guilty beyond a reasonable doubt' " (*People v Cahill*, 2 NY3d 14, 58 [2003], quoting *People v Crum*, 272 NY 348, 350 [1936]; *see People v Clark*, 52 AD3d 860, 861-862 [2008]).

Rose and Malone Jr., JJ., concur.

Carpinello, J. (dissenting). Because we cannot say that the jury in this case "failed to give the evidence the weight it should be accorded," we dissent from the majority's conclusion that the verdict is against the weight of the evidence (*People v Bleakley*, 69 NY2d 490, 495 [1987]). In conducting a weight of the evidence analysis, this Court cannot substitute itself for the jury and must accord great deference to every reasonable inference it could draw from the evidence, particularly given the jury's opportunity to view the witnesses, hear their testimony and observe their demeanor (*see id.*). In short, "the verdict 'must remain undisturbed unless the record reveals that it is clearly unsupported' " (*People v Labar*, 278 AD2d 522, 523 [2000], quoting *People v Maxwell*, 260 AD2d 653, 654 [1999], *lv denied* 93 NY2d 1004 [1999]).

In this case, we find it noteworthy that defendant chose to take the stand and be exposed to cross-examination by the People. While we certainly have the record of his testimony, we have no hint of his demeanor. There was no sign of forced entry at the scene of the fire. In addition, as conceded by the majority, the jury heard from two certified fire investigators, Richard Coleman from the City of Albany Fire Department and Thomas

Mitchell, who had been retained by defendant's insurer. Both investigators testified that, based upon their physical inspection of the subject premises, *all* accidental causes for the fire had been eliminated.

In this regard, we take specific exception to the majority's conclusion that these experts did not "reasonably" exclude the possibility of an electrical fire. The precise origin of the fire, identified by a distinctive "V" burn pattern on the wall, was in a corner of the kitchen near the stove. Although the kitchen appliances referred to by the majority were indeed clustered in the corner of the kitchen where the fire originated, none was at the base of the distinctive "V" burn pattern depicted in the photographs admitted into evidence. Mitchell especially noted that the kitchen appliances such as the stove and refrigerator had been inspected by him, showed no sign of malfunction and had been eliminated as potential sources of the fire. With respect to the tripped circuit breakers, he observed that they could have been tripped simply by the heat of the fire. Critically, the sample of wood taken from the baseboard by Coleman at the origin of the fire subsequently tested positive for "medium petroleum distillate, examples of which are paint thinners, dry cleaning solvents, and some brands of charcoal starter fluid." In addition, Mitchell noted an unusual burn pattern on the floor of the kitchen "consistent with something liquid burning across the surface of the floor." Finally, an engineering examination of the electric heater, the existence of which was specifically mentioned by defendant, first in his 911 call and again upon being interviewed by Coleman at the scene of the fire, indicated that it was *not* the source of the fire.

Further proof at trial established that defendant was delinquent in his real property taxes, that gas service to the residence had been disconnected after a history of late payments and threatened shutoffs and that, shortly before the fire, his fire insurance coverage had been increased. Specifically, his insurance had been cancelled for nonpayment effective July 30, 2004. Subsequently, he obtained a new policy with $50,000 worth of structure coverage and no contents coverage. On October 15, 2004, a month prior to the fire, the structure coverage was increased to $65,000 and $31,000 in contents coverage was obtained. In our view, defendant's financial motive, his opportunity to set the fire, expert testimony that petroleum distillate was found at the origin of the fire and evidence that no one else had access to the premises compel the conclusion that the jury's verdict was adequately supported by the weight of the evidence (*see People v Cushner*, 46 AD3d 1121, 1123-1124 [2007],

*lv denied* 10 NY3d 809 [2008]; *People v Labar, supra*). Accordingly, the judgment of conviction should be affirmed.

Cardona, P.J., concurs. Ordered that the judgment is reversed, on the facts, and indictment dismissed.