[876 NYS2d 541]

The People of the State of New York, Respondent, v William S. Demagall, Appellant.

Third Department, April 2, 2009

### APPEARANCES OF COUNSEL

*Richard L. Mott*, Albany (*Paul J. Connolly*, Delmar, of counsel), for appellant.

*Beth G. Cozzolino, District Attorney*, Hudson (*H. Neal Conolly* of counsel), for respondent.

### OPINION OF THE COURT

LAHTINEN, J.

In this murder case, defendant asserted insanity as his defense. Defendant had a three-year history of severe psychiatric problems that had been manifested in a variety of bizarre actions and resulted in him being placed several times in a secure psychiatric facility in Massachusetts. He was at that facility when, on February 9, 2006, he escaped. He claimed to have received a vision from God directing him to kill the victim, a person with whom he had a brief encounter a couple of weeks earlier and whom he believed provided drugs to minors. Defendant entered the victim's home in Columbia County on the morning of February 11, 2006, where he killed him by stabbing him over 30 times and repeatedly striking him with a paperweight that he had placed in a sock. Defendant piled various items around the victim's body and set the pile on fire. He took a few items from the home and then left the premises.

Following the killing, defendant was accused of an unrelated minor matter, which resulted in his being held briefly at the Rensselaer County Jail. As he was exiting the jail on February 15, 2006, he was approached by Kevin Skype, an investigator from the Columbia County Sheriff's Department, and Mark Marino, an agent with the Bureau of Alcohol, Tobacco and Firearms. After brief questioning, defendant admitted his involvement in killing the victim. The law enforcement officers transported defendant to Marino's office in the City of Albany, where he received *Miranda* warnings and then gave a detailed 11-page statement.

He was indicted on two counts of murder in the second degree, robbery in the first degree and arson in the second degree. The People withdrew all counts except one count of murder in the second degree. Based upon the forensic psychiatric report of Stuart Kleinman that was prepared at the People's request, the People consented to defendant's entry of a plea of not responsible by reason of mental disease or defect (*see* CPL 220.15; Penal Law § 40.15). County Court, however, rejected the plea. The matter proceeded to trial, where the insanity defense was urged by defendant. Rejecting the defense, the jury convicted defendant of the murder count. Defendant thereafter moved to set aside the verdict and County Court denied the motion without a hearing. Defendant was sentenced to a prison term of 25 years to life. Defendant appeals.

Defendant initially contends that County Court erred in declining to accept his plea, made pursuant to CPL 220.15, of not responsible by reason of mental disease or defect. "[A] trial

court is not required to accept every offer of a plea merely because the defendant wishes to enter a plea and may reject a plea offer in the exercise of sound judicial discretion" (*People v Washington*, 229 AD2d 726, 727 [1996], *lv denied* 88 NY2d 1025 [1996]). Before accepting a plea of not responsible by reason of mental disease or defect, the court must, among other things, be satisfied that the defense would be proven by defendant by a preponderance of the evidence at trial (*see* CPL 220.15 [5] [b]). To establish the affirmative defense, defendant must show that at the time the crime was committed, defendant "lacked substantial capacity to know or appreciate either . . . [t]he nature and consequences of such conduct; or . . . [t]hat such conduct was wrong" (Penal Law § 40.15).

■ Kleinman opined in his forensic psychiatric evaluation that defendant had the capacity to know that killing was illegal, but he did not appreciate that doing so was wrong. County Court rejected this opinion based upon its interpretation of the law as providing that, if defendant knew his conduct was illegal, then he necessarily knew it was wrong. As described by Judge Cardozo in detail in *People v Schmidt* (216 NY 324, 335-340 [1915]), the law, albeit nuanced, does not compel the conclusion that knowledge of wrong necessarily follows knowledge of illegality (*see People v Wood*, 12 NY2d 69, 76 [1962]; CJI2d[NY] Defenses—Insanity; Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 40.15, at 297-299). Notwithstanding County Court's misapprehension of the law, reversal is not required for its refusal to accept the plea. It is apparent from its written decision that the court was unpersuaded by some of the evidence accepted by Kleinman in his analysis, and the court also supported its rejection of the plea by its own observation of defendant's demeanor. Moreover, "defendant was not unduly prejudiced since he was allowed to present his defense to the jury which could have found him not criminally responsible by reason of mental disease or defect" (*People v Washington*, 229 AD2d at 728). Nevertheless, we find that County Court's misapprehension of the law contributed to a prejudicial error at trial regarding defendant's efforts to comment on the failure of the People to produce Kleinman at trial.

Before addressing that issue, we will address defendant's argument that the jury's verdict was against the weight of the evidence, an issue that would require dismissal of the indictment if found persuasive (*see* CPL 470.20 [5]). Where, as here, a different verdict would not have been unreasonable, our weight

of the evidence review includes weighing conflicting testimony, reviewing rational inferences that may be drawn from the evidence and evaluating the strength thereof (*see People v Danielson*, 9 NY3d 342, 348 [2007]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Deference is accorded the jury's credibility determinations since it has the benefit of seeing the witnesses and observing their demeanor (*see People v Romero*, 7 NY3d 633, 644 [2006]; *People v Washington*, 229 AD2d at 728).

Defendant produced two experts who gave detailed explanations as to why defendant's actions were consistent with acute mental infirmities. Defendant's diagnosis included schizophrenia, paranoid type. He was also delusional, having believed that he was, variously, among others, Robin Hood, Merlin and Sir Galahad of the Arthurian legends, a ninja, and the slayer of the white stag. Numerous other examples of unusual behavior—such as living for a while in a cave despite having a home—were set forth. Defendant's experts opined that defendant lacked capacity to know or appreciate that his conduct was wrong.

■ On rebuttal, the People produced psychiatrist Alan Tuckman, who opined to a reasonable degree of medical certainty that defendant appreciated both that he was killing another individual and that such conduct was wrong. He found support for his conclusion that defendant knew his conduct was wrong in acts he interpreted as being calculated to cover up the crime, including, among many others, setting the house on fire, stealing items from the house, locking and barricading doors, and giving a false name when initially approached by police. A review of the record, while revealing a difficult issue regarding defendant's sanity, does not persuade us that the jury's assessment of credibility and its ultimate determination were against the weight of the evidence (*see People v Lombard*, 258 AD2d 476, 476 [1999], *lv denied* 93 NY2d 973 [1999]).

■ However, for the reasons that follow, we do find merit in defendant's argument that reversible error occurred as a result of County Court's handling of the People's decision not to produce Kleinman, who was the first expert they retained to examine defendant. Defendant asserts three interrelated—and escalating—errors: County Court refused to give a missing witness charge; the court directed defense counsel that he could not urge the jury in summation to draw an inference from the People's failure to call Kleinman; and, when the jury sent a note inquiring why it had not heard from Kleinman, it was instructed by the court that "you may not speculate as to why you did not hear from [Kleinman]."

Prior to the close of proof, defense counsel indicated that he planned to point out in summation that Tuckman was not the first psychiatrist used by the People to examine defendant. County Court directed counsel that he would not be permitted to make such a comment. The court stated that such a comment would "require the jurors to speculate" and call "into question the District Attorney's credibility and expertise." The court reiterated its early (incorrect) determination that Kleinman's opinion was premised upon a wrong application of the law regarding insanity. Defense counsel also requested a missing witness charge, which County Court denied. Defense counsel was limited in summation to a brief comment upon testimony he had elicited from Tuckman on cross-examination regarding the fact that Tuckman had "reviewed the 40-page report of Dr. Kleinman, the first doctor who examined [defendant] for the prosecution." During its deliberations, the jury sent out a note asking why it had not heard from the other psychiatrist (i.e., Kleinman). Defense counsel renewed his request for a missing witness charge. Instead, County Court instructed the jury that it was not permitted to speculate as to why Kleinman did not testify.

The preconditions for the missing witness charge are discussed in detail in *People v Savinon* (100 NY2d 192, 196-201 [2003]) and, briefly stated, require a showing that "the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him [or her], and that the witness is available to such party" (*People v Gonzalez*, 68 NY2d 424, 427 [1986]). The decision whether to give such charge is reviewed on appeal under the abuse of discretion standard (*see People v Savinon*, 100 NY2d at 197; *People v Macana*, 84 NY2d 173, 179-180 [1994]). However, in many circumstances, "[a] defendant not necessarily entitled to a missing witness charge may nonetheless try to persuade the jury to draw inferences from the People's failure to call an available witness with material, noncumulative information about the case" (*People v Williams*, 5 NY3d 732, 734 [2005]).

The failure of the People to produce Kleinman met the preconditions for a missing witness charge. He had been retained by the People to provide a forensic psychiatric evaluation of defendant. After examining defendant and pertinent medical records, he prepared a detailed report. His opinions as

reflected in his report were not merely cumulative of the other experts. In the context of this analysis, the People offered no explanation for not producing Kleinman. There are many cases where a party's failure to produce its own expert without explanation results in an adverse inference where, as here, the expert's testimony would not have been cumulative (*see e.g. Fuller v Preis*, 35 NY2d 425, 433 [1974]; *Barbul v Matsia Props., Corp.*, 47 AD3d 459, 459 [2008]; *Fisher v Jackstadt*, 291 AD2d 689, 691 [2002]; *Ross v Manhattan Chelsea Assoc.*, 194 AD2d 332, 334 [1993]; *Camillo v Geer*, 185 AD2d 192, 196 [1992]; *Rivera v MKB Indus.*, 149 AD2d 676, 677 [1989]; *Chandler v Flynn*, 111 AD2d 300, 301-302 [1985], *appeal dismissed* 67 NY2d 647 [1986]).

Refusing to give the missing witness charge would not have necessarily resulted in prejudicial error if defense counsel had been permitted to comment in summation upon the failure of the People to produce Kleinman (*see Goverski v Miller*, 282 AD2d 789, 791 [2001]). Not only was defense counsel precluded from such a comment, but also when the jury inquired about Kleinman, it was affirmatively instructed that it was not permitted to speculate about his absence. This was further error (*see People v Williams*, 5 NY3d at 734). Defendant's sanity was the key issue in the case and resolution of that issue turned upon the opinions of the psychiatrists who had examined him. Review of the record reveals that this was a close and difficult issue in this case. Under the circumstances, we are constrained to conclude that the cumulative effect of the errors as discussed herein require a new trial.

While the remaining issues are academic, we find merit in defendant's request for a remittal to a different judge under the circumstances of this case.

MERCURE, J.P., ROSE, MALONE JR. and KAVANAGH, JJ., concur.

Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Columbia County for a new trial before a different judge.