■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KASON O'NEIL, Appellant. [887 NYS2d 705]—

Peters, J. Appeal from a judgment of the County Court of Washington County (McKeighan, J.), rendered October 17, 2008, upon a verdict convicting defendant of the crimes of sexual abuse in the third degree and endangering the welfare of a child.

In 2005, defendant, then 24 years old, was hired to teach physical education and coach track at a high school in Washington County. Over the next two years, he worked closely with the victim, the school's best female runner, who was a 14-year-old freshman when he began coaching her. Prior to the start of her junior year, the victim's family moved to Fulton County, and she enrolled in school there. Shortly thereafter, she disclosed that defendant had raped her.

Defendant was charged with three counts of rape in the second degree, two counts of rape in the third degree, six counts of criminal sexual act in the second degree, three counts of criminal sexual act in the third degree, six counts of sexual abuse in the third degree and one count of endangering the

welfare of a child. With the exception of counts eight and nine, which alleged that defendant subjected the victim to sexual contact during a car ride in the spring of 2006 by placing his hand on her vaginal area and having her place her hand on his penis, respectively, the remaining charges pertained to six separate instances of rape and other sex-related crimes alleged to have occurred between December 2005 and March 2007 in defendant's office, which was situated in the boys' locker room at the high school.

At the ensuing jury trial, the sole evidence of defendant's commission of the crimes came from the testimony of the victim. Following the conclusion of the People's case-in-chief, County Court dismissed two counts of sexual abuse in the third degree, two counts of criminal sexual act in the second degree and one count of criminal sexual act in the third degree. At the close of all proof, County Court dismissed the remaining two counts of criminal sexual act in the third degree. After four days of deliberations and an *Allen* charge, which was prompted by two notes from the jury reflecting its inability to reach a unanimous verdict, defendant was found guilty of one count of sexual abuse in the third degree (count eight[1]) and endangering the welfare of a child, but acquitted of the remaining charges.

On appeal, defendant asserts that his convictions of sexual abuse in the third degree and endangering the welfare of a child are against the weight of the credible evidence. Upon our independent review of the record, we agree.

In performing a weight of the evidence analysis, this Court "sits, in effect, as a 'thirteenth juror' " (*People v Cahill*, 2 NY3d 14, 58 [2003], quoting *Tibbs v Florida*, 457 US 31, 42 [1982]; *see People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Hines*, 9 AD3d 507, 511 [2004], *lv denied* 3 NY3d 707 [2004]). Where, as here, an acquittal would not have been unreasonable, we must, "like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]; *see People v Romero*, 7 NY3d 633, 643 [2006]). We must then decide whether, based upon the weight of the credible evidence, "the jury was justified in finding the defendant guilty beyond a reasonable doubt" (*People v Danielson*, 9 NY3d at 348; *see People v Mann*, 63 AD3d 1372, 1373 [2009]; *People v Richardson*, 55 AD3d 934, 938 [2008], *lv dismissed* 11 NY3d 857 [2008]).

---

**1.** Although County Court renumbered the counts of the indictment at the close of proof, we refer to the counts as they were originally numbered in the indictment.

Here, the incident underlying defendant's conviction for sexual abuse in the third degree purportedly occurred while he and the victim were traveling to Queensbury High School for a steeplechase race practice, on the sole occasion that a practice was held there. According to the victim, she was alone in the car with defendant and, during the ride to the site, he rubbed her vagina over her clothes. This sparse description of the event was the only evidence presented by the People concerning this incident. Notably, no evidence was presented concerning the other incident that allegedly occurred during the same car ride. Rather, the victim responded in the negative when asked on direct examination whether she touched him during the ride.

In contrast to the victim's testimony, defendant denied ever acting inappropriately toward the victim and stated that Matt Lancette and Erin Tripp, other students who attended the practice, were present in the vehicle during the car ride. Lancette testified similarly, stating that he and Tripp rode in the back of defendant's vehicle while the victim and defendant sat in the front. He recalled that defendant's vehicle was a "knees-touching-the-back-of-the-seat kind of car" and testified that he did not witness defendant touch the victim, nor did the victim complain about any inappropriate behavior on the part of defendant. He also noted, consistent with defendant's testimony, that the car had a standard transmission requiring defendant to shift gears while driving. Although Lancette initially told the police that he was driven to the practice by Tripp and that the victim was driven by her parents, he explained during his testimony that the investigating officers were very "pushy" regarding this alleged incident, in that they were refusing to accept "I don't know" as an answer, and that the statement he signed was inaccurate. He recollected after the interview that Tripp could not have driven him to the practice in Queensbury because she did not have her license at the time and that the victim's parents were not present at the practice. Tripp also testified, stating that although she could not recall how she got to the practice, she did remember that only defendant and another student, Ryan McCarthy, drove to the practice, and that she and Lancette were in the same car. She ultimately stated that it was "very possible" that she was in the car with the other three on that day.

Although we recognize that a jury's credibility determinations are ordinarily entitled to great deference (*see People v McCowan*, 45 AD3d 888, 889 [2007], *lv denied* 9 NY3d 1007 [2007]; *see generally People v Bleakley*, 69 NY2d at 495), the record before us reveals that the victim's reliability is manifestly suspect. In contrast to the brief testimony that she provided with respect to

the instant charge, the victim testified in much greater detail as to the rapes and related sexual conduct that allegedly took place in defendant's office. Yet, the jury evidently had little confidence in the victim's credibility since it acquitted defendant of all counts in connection with those incidents.[2] Moreover, as already noted, while the indictment alleged that defendant also had the victim place her hand on his penis during that same car ride in question—an allegation that can be reasonably attributed to the victim—the victim testified at trial that she never touched defendant on that occasion. Further, the victim's testimony was laden with inconsistencies, contradicted other evidence and, at times, strained credulity. For instance, although she initially reported that defendant had raped her 10 to 15 times and that most of the rapes occurred in defendant's car, her trial testimony differed dramatically, in that she claimed that she was raped and subjected to other related sexual conduct on six separate occasions while in defendant's office.

It was also adduced through the testimony of multiple witnesses that the victim had a reputation for being untruthful. Moreover, a former female coach, who had considered the victim to be "like a daughter to [her]," explained how, after confronting the victim about an attitude and behavior problem, the victim responded by attempting to manipulate the school administrators against her. Conversely, both students and adults associated with defendant, including the director of a summer camp where he had worked for the previous seven years, testified as to defendant's professional and highly respectable reputation in dealing with young athletes. Evaluating the evidence in a neutral light (*see People v Romero*, 7 NY3d at 643-644), we simply cannot conclude that it was " 'of such weight and credibility as to convince us that the jury was justified in finding the defendant guilty beyond a reasonable doubt' " (*People v Cahill*, 2 NY3d at 58, quoting *People v Crum*, 272 NY 348, 350 [1936]; *see People v Bastow*, 217 AD2d 930, 930-931 [1995], *lv denied* 86 NY2d 872 [1995]; *People v Elliott*, 209 AD2d 537, 537 [1994]; *People v Seda*, 199 AD2d 347, 348 [1993]; *People v Harry*, 181 AD2d 694, 695 [1992]; *People v Al-Sullami*, 162 AD2d 691, 693 [1990]; *see also People v Richardson*, 55 AD3d at 938).

In light of our conclusion that the jury's verdict convicting defendant of sexual abuse in the third degree is against the

---

**2.** In performing our weight of the evidence review, we may consider the jury's acquittal on the remaining counts (*see People v Rayam*, 94 NY2d 557, 563 n [2000]; *People v Ross*, 62 AD3d 619, 619 [2009], *lv denied* 12 NY3d 928 [2009]; *People v Johnson*, 250 AD2d 1026, 1028-1029 [1998], *lv denied* 92 NY2d 899 [1998]).

weight of the evidence, and given defendant's acquittal on each of the remaining sex charges and the absence of any credible evidence that he knowingly acted "in a manner likely to be injurious to the physical, mental or moral welfare of a child" (Penal Law § 260.10 [1]), we find that his conviction of endangering the welfare of a child is also against the weight of the evidence.

Defendant's remaining contentions are rendered academic by our determination.

Cardona, P.J., Kavanagh, Stein and McCarthy, JJ., concur. Ordered that the judgment is reversed, on the facts, and indictment dismissed.