■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDREA STEVENS, Appellant. [922 NYS2d 596]—

Egan Jr., J. Appeals (1) from a judgment of the County Court of Cortland County (Campbell, J.), rendered March 11, 2010, upon a verdict convicting defendant of the crime of arson in the third degree, and (2) from an order of said court, entered July 22, 2010, which amended the judgment of conviction to specify the amount of restitution owed by defendant.

Defendant rented space for her retail store—Smooches—in the first floor of a three-story building located at 51-53 Main Street in the City of Cortland, Cortland County. An art gallery was located on the second floor and two residential apartments were located on the third floor. Another business—Shangri-La— occupied the retail space next door to Smooches. Smooches and Shangri-La shared a common hallway between the two businesses, and inside this common hallway was a stairway leading to the basement. In the early evening hours of October 19, 2005, a fire substantially damaged Smooches, the two upper floors and Shangri-La. A grand jury thereafter indicted defendant on the charge of arson in the third degree and, following a jury trial, she was convicted as charged and sentenced to a prison term of 1 to 3 years. After a subsequent restitution hearing, County Court ordered that defendant pay restitution in the amount of $153,571.74, and the judgment of conviction was amended to reflect this amount. Defendant now appeals from the judgment of conviction and the subsequent amendment thereto.*

Initially, defendant's challenge to the legal sufficiency of the evidence presented to the grand jury is precluded given that her conviction is based upon what we view as legally sufficient trial evidence (see CPL 210.30 [6]; People v Bastian, 83 AD3d 1468, 1468, [2011]; People v Leonard, 83 AD3d 1113, 1116 [2011]; People v Dowling, 75 AD3d 838, 840 [2010], lv denied 15 NY3d 952 [2010]).

---

* County Court granted defendant's motion to stay the sentence pending appeal.

Defendant next contends that her conviction is against the weight of the evidence in that the People failed to prove beyond a reasonable doubt that she intentionally set fire to the building. "Inasmuch as a different verdict would not have been unreasonable, we must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Dixon*, 62 AD3d 1036, 1038 [2009], *lv denied* 12 NY3d 912 [2009] [internal quotation marks and citations omitted]; *see People v Molina*, 79 AD3d 1371, 1374-1375 [2010]; *People v Richardson*, 55 AD3d 934, 935 [2008], *lv dismissed* 11 NY3d 857 [2008]; *People v Cushner*, 46 AD3d 1121, 1123 [2007], *lv denied* 10 NY3d 809 [2008]). In essence, we "sit[ ] as a thirteenth juror and decide[ ] which facts were proven at trial and, in light of those facts, whether the elements of the crimes charged have been proven beyond a reasonable doubt" (*People v Wilson*, 78 AD3d 1213, 1216 [2010], *lv denied* 16 NY3d 747 [2011] [internal quotation marks and citations omitted]; *see People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Dean*, 70 AD3d 1193, 1194 [2010]).

Here, fire investigators concluded that the fire had originated in the first-floor common hallway located between Shangri-La and Smooches and that, as evidenced by two burn holes on the floor of the hallway, the cause of the fire was consistent with the introduction of an ignitable liquid in that area. An investigator with the State Office of Fire Prevention and Control visited the scene the day after the fire with Booka, a K-9 dog trained to detect ignitable liquids. At that time, Booka indicated that there was ignitable liquid vapor present in the area of the two burn holes on the floor. Subsequent forensic testing of floor samples taken from the area near the burn holes confirmed the presence of heavy petroleum distillates—consistent with kerosene, lighter fluids or other ignitable fluids—and terpenes. Fire investigators also ruled out all electrical, mechanical, natural and accidental heat sources and concluded that no natural or accidental ignition sources could be identified.

Defendant testified that she closed Smooches at 5:00 P.M. on the day of the fire to have dinner with her family at a nearby restaurant, but then, on her way home, returned to Smooches between 6:10 P.M. and 6:15 P.M. to use the bathroom. Defendant testified that, at that time, she neither smelled nor saw smoke. However, Bonnie Titus, an employee of a neighboring business located approximately one block away, testified that as she walked home past the building where Smooches and Shangri-La were located at approximately 6:15 P.M., she noticed a very

strong odor of wood smoke. When Titus arrived at her nearby apartment only minutes later, she observed that the building where Smooches was located was on fire. The fire was reported at 6:19 P.M. and firefighters arrived at the scene within approximately three minutes, at which time they observed heavy smoke emanating from the back of the building in the area of the second floor and from the front of the building in the area between Smooches and Shangri-La. Besides defendant, no one else was in the building at the time of the fire—other than an elderly tenant who resided on the third floor and did not have access to the common hallway.

The evidence also established that defendant was experiencing financial trouble at the time of the October 2005 fire. Specifically, defendant owed the Internal Revenue Service $100,000 and owed the State of New York $3,000. Defendant also recently had incurred several overdraft fees with respect to Smooches' bank account and, at one point, the account had a negative balance. Earlier that year, defendant filed for bankruptcy after her mortgage company commenced foreclosure proceedings on the family residence. Significantly, nine days before the fire, defendant doubled the insurance limits for contents under Smooches' business owner's insurance policy from $50,000 to $100,000. "While motive evidence does not establish any element of the crime, and cannot take the place of proof of the accused's actual commission of the crime, such evidence cannot be ignored" (*People v Cushner*, 46 AD3d at 1124 [internal quotation marks and citation omitted]; *compare People v Richardson*, 55 AD3d at 937).

Viewing this evidence in a neutral light and giving the appropriate deference to the jury's credibility determinations, we find that the jury's verdict was not against the weight of the evidence (*see* Penal Law § 150.10 [1]; *People v Self*, 75 AD3d 924, 926 [2010], *lv denied* 15 NY3d 895 [2010]; *People v Cushner*, 46 AD3d at 1124; *People v Labar*, 278 AD2d 522, 523 [2000]). To the extent that defendant's arson investigator testified—in contrast to the opinions provided by the People's witnesses— that the fire started in the ceiling between the first and second floors of the common hallway and that an electrical cause could not be ruled out, that testimony presented a credibility determination for the jury (*see People v Demagall*, 63 AD3d 34, 38 [2009], *lv denied* 12 NY3d 924 [2009]).

Next, viewing defense counsel's performance in its totality (*see People v Cummings*, 16 NY3d 784, 785 [2011]), we are unpersuaded that counsel's candid admission—that he incorrectly advised defendant that probation was a possible sentence

when, in fact, defendant faced a minimum of one year in prison if convicted (*see* Penal Law § 70.00 [1], [3] [b])—rises to the level of ineffective assistance of counsel (*see People v Modica*, 64 NY2d 828, 829 [1985]; *People v Tatum*, 82 AD3d 1411, 1411 [2011]; *People v Palma*, 305 AD2d 333, 334 [2003], *lv denied* 100 NY2d 644 [2003]). In any event, defendant failed to establish that she was prejudiced by this mistake and that, but for said error, an acceptable plea bargain would have been struck— particularly in light of her repeated claims of innocence and the fact that defendant, through counsel, advised the court that she would not accept a plea (*see People v Thomson*, 46 AD3d 939, 940 [2007], *lv denied* 9 NY3d 1039 [2008]).

Finally, contrary to defendant's argument, County Court properly fixed the amount of restitution insofar as it awarded Jared Troutman—one of the gallery owners—$2,000 for counseling costs incurred as a result of the fire and awarded Sheldon Gosline—the owner of Shangri-La—$130,997.57 in business losses. "At a restitution hearing, the People bear the burden of proving the victim's out-of-pocket loss—the amount necessary to make the victim whole—by a preponderance of the evidence" (*People v Tzitzikalakis*, 8 NY3d 217, 221 [2007] [citations omitted]; *see* Penal Law § 60.27; *People v Horne*, 97 NY2d 404, 410-411 [2002]; *People v Russell*, 41 AD3d 1094, 1096 [2007], *lv denied* 10 NY3d 964 [2008]). Moreover, at the restitution hearing, "[a]ny relevant evidence is admissible unless privileged regardless of its admissibility under the rules of evidence" (*People v Consalvo*, 89 NY2d 140, 145 [1996]). Contrary to defendant's assertion, Troutman's sworn testimony—that the out-of-pocket expenses for counseling services sought for himself and his wife between January 2010 and May 2010 totaled approximately $1,000 for each of them—was sufficient to establish the loss incurred (*see People v Senecal*, 31 AD3d 980, 980-981 [2006]; *People v Periard*, 15 AD3d 693, 694 [2005]). We also find that the spreadsheet compiled by Gosline itemizing the losses sustained by Shangri-La as a result of the fire, together with Gosline's testimony that each item that was destroyed was located inside the building at the time of the fire, sufficiently established the losses claimed (*see People v Ford*, 77 AD3d 1176, 1177 [2010]).

Mercure, J.P., Rose, Malone Jr. and Stein, JJ., concur. Ordered that the judgment and order are affirmed, and matter remitted to the County Court of Cortland County for further proceedings pursuant to CPL 460.50 (5).