[864 NE2d 44, 832 NYS2d 120]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JIMMY TZITZIKALAKIS, Respondent.

Argued January 2, 2007; decided February 15, 2007

**POINTS OF COUNSEL**

*Robert M. Morgenthau, District Attorney,* New York City (*Paula-Rose Stark* and *Mark Dwyer* of counsel), for appellant. Since defendant fraudulently induced payment of $950,136 from the City, he stole that entire amount. In restitution, defendant was not entitled to any credit to offset that amount except to the extent that he was able to document his actual expenditures. (*People v Horne,* 97 NY2d 404; *People v Consalvo,* 89 NY2d 140; *People v Fuller,* 57 NY2d 152; *People v Thigpen,* 60 AD2d 860; *People v Feldman,* 204 AD2d 347; *People v Kim,* 91 NY2d 407; *People v Francis L.M.,* 278 AD2d 919; *People v David N.,* 140 AD2d 460; *People v Bennett,* 79 NY2d 464; *Smith v Brady,* 17 NY 173.)

*Law Offices of Gerald L. Shargel,* New York City (*Ross M. Kramer, Gerald L. Shargel* and *Henry E. Mazurek* of counsel), for respondent. I. The hearing court violated Mr. Tzitzikalakis' due process rights by failing to follow the substantive and procedural requirements for determining restitution under Penal Law § 60.27 and Criminal Procedure Law § 400.30. (*People v Young,* 163 Misc 2d 72; *People v Consalvo,* 89 NY2d 140; *People v Ashley,* 162 AD2d 883; *People v Fuller,* 57 NY2d 152; *People v Thigpen,* 60 AD2d 860; *People v Horne,* 97 NY2d 404; *People v Lambert,* 221 AD2d 1015; *People v Stacey,* 173 AD2d 960; *People v Kom,* 120 Misc 2d 630; *People v Crossley,* 134 Misc 2d 742.) II. The trial court violated Penal Law § 60.27 by not requiring the People to prove the value of actual loss sustained by the City, accounting for the value of materials and services provided by defendant, and by precluding defendant from introducing his own evidence of the goods and services provided. (*People v Young,* 163 Misc 2d 72; *People v Consalvo,* 89 NY2d 140; *People v Calvi,* 224 AD2d 705.)

**OPINION OF THE COURT**

Chief Judge KAYE.

Defendant was the principal of Foundation Construction

Consultants, a company that completed a number of projects for the City of New York pursuant to a contract with the city's Department of Citywide Administrative Services (DCAS). These projects included courtroom construction at the Queens Criminal Court and lighting work at Two Lafayette Street in Manhattan. Between 1996 and 1998, the city paid Foundation approximately $2,700,000 for its work under the contract. A subsequent investigation, however, revealed that defendant had submitted numerous false invoices purportedly reflecting amounts billed by subcontractors.

Defendant was charged with grand larceny in the second degree, attempted grand larceny in the second degree, and 26 counts of both criminal possession of a forged instrument in the second degree and falsifying business records in the first degree. Defendant pleaded guilty to grand larceny in the second degree and one count of falsifying business records in the first degree, in full satisfaction of the indictment. Supreme Court sentenced him to 1 to 3 years for grand larceny and ordered restitution with a conditional discharge for falsifying business records.

At a restitution hearing to determine the amount of the city's out-of-pocket loss, the sole witness was Christine Carl, a confidential investigator for the city Department of Investigation. Carl testified that, in order to be paid under the DCAS contract, defendant had to submit periodic payment requests with supporting invoices from subcontractors. Once a payment request with supporting documentation was received, the DCAS resident engineer would review the request and certify that the work had been completed and the materials supplied. If the engineering unit signed off on the request, the audits and accounts unit would review the request to ensure that the total payment matched the supporting documentation, and payment would be made.

Carl further explained that, as a result of her investigation, she determined that a number of defendant's invoices were falsified. In calculating the city's loss, she subtracted from the face amount of these invoices the actual costs reported to her by the subcontractors; where the subcontractor provided her with a range of actual costs (for example, $40,000 to $50,000), she subtracted the higher amount. However, in the case of two of the subcontractors—Vack Electric and Essex Glass—Carl included the full face amount of the invoices because neither company existed at the time it allegedly provided the goods or services reflected on the invoices. By Carl's calculations, the city's out-of-pocket loss was $340,143.

On cross-examination, defendant attempted to inquire as to whether the work and materials reflected on the invoices had in fact been provided, but the court precluded this inquiry. The court also refused to allow defendant's evidence of the fair market value of the materials shown on the invoices, explaining that it would accept only evidence documenting defendant's actual expenditures in connection with completing those projects. The court reasoned that the People were required to show only the face amount of the falsified invoices the city paid. The burden of proving offsets then fell to defendant and could be satisfied only through evidence documenting costs actually incurred. Thus, according to the hearing court, the prosecution's allowance of setoffs for the subcontractors' costs was an act of generosity, not a legal requirement.

Following the hearing, the court issued a written decision adopting the restitution amount proffered by the prosecution, $340,143. In that decision, the court reiterated its view that the People's burden of proof does not require any recognition of the value of goods or services actually delivered by defendant. That burden fell to defendant and was not satisfied. On appeal, defendant argued that the hearing court violated Penal Law § 60.27 and CPL 400.30 by improperly shifting the burden of proving the city's out-of-pocket loss to him. He also asserted that the court erred in precluding evidence of the fair market value of the goods and services he provided to the city under the contract. The Appellate Division agreed and ordered a new restitution hearing, noting that the result was dictated by the plain statutory language assigning the burden of proof to the People. We now affirm.

Restitution—seeking to ensure that an offender's punishment includes making the victim whole—has been a part of New York's criminal justice system since at least 1910 (*see People v Amorosi*, 96 NY2d 180, 183 [2001]; *People v Fuller*, 57 NY2d 152, 157 [1982]). While long available to crime victims, restitution has become more prevalent over the past quarter-century (*see People v Hall-Wilson*, 69 NY2d 154, 156-157 [1987]), and courts since 1983 have been required to consider including restitution as part of the sentence imposed upon a person convicted of an offense (*see id.* at 157; Penal Law § 60.27 [1]).

Restitution is "the sum necessary to compensate the victim for out-of-pocket losses" (*People v Consalvo*, 89 NY2d 140, 144 [1996]; *see also* Penal Law § 60.27 [1]). Thus, courts must consider not only the amount taken by the defendant but also the value of any benefit received by the victim (*see Lama Hold-*

*ing Co. v Smith Barney*, 88 NY2d 413, 421 [1996]; *see also United States v Swanson*, 394 F3d 520, 528 [7th Cir 2005] [any value conferred on the victim from the criminal transaction "must be deducted from the restitution award"]; *Karrell v United States*, 181 F2d 981, 987 [9th Cir 1950] [the proper restitution amount is "the sum paid by the (victim) over and above the value of the thing he got"]).[1] Indeed, we have recognized that a restitution order must include appropriate "offsets or other factors which could properly reduce the total amount" (*Fuller*, 57 NY2d at 158 [internal quotation marks omitted]).

If the court is unable to make a finding as to the actual out-of-pocket loss based on the record before it, or if the defendant so requests, the court must conduct a hearing in accordance with the procedure set forth in CPL 400.30 (Penal Law § 60.27 [2]). CPL 400.30 (4) provides:

> "*At any hearing held pursuant to this section the burden of proof rests upon the people*. A finding as to the amount of the defendant's gain from the commission of the offense must be based upon a preponderance of the evidence. Any relevant evidence, not legally privileged, may be received regardless of its admissibility under the exclusionary rules of evidence." (Emphasis added.)

At a restitution hearing, the People bear the burden of proving the victim's out-of-pocket loss—the amount necessary to make the victim whole—by a preponderance of the evidence (*see People v Horne*, 97 NY2d 404, 410-411 [2002]; *Consalvo*, 89 NY2d at 145).[2] To meet that burden, the People must show both

---

1. The legislative history clarifies that the restitution amount may not be only the value of the property taken by the defendant. Section 60.27 of the Penal Law was designed "to require the sentencing court to determine and fix the amount of restitution and reparation based upon the dollar amount of the fruits of the offense and the actual out-of-pocket loss to the crime victim, without respect to . . . the extent to which [the defendant] profited by the offense." (Governor's Program Bill Mem, Bill Jacket, L 1992, ch 618, at 21.)

2. The People's burden of proof encompasses both the burden of producing evidence sufficient to establish a prima facie case of the proper restitution amount (the out-of-pocket loss, which includes appropriate reductions) as well as the burden of persuasion—that is, the ultimate burden of convincing the hearing court, after all the evidence is submitted, that its restitution figure is, more likely than not, correct (*see* Prince, Richardson on Evidence §§ 3-201, 3-206 [Farrell 11th ed]). The dissent agrees that the People bear the burden of proving the victim's out-of-pocket loss but implies that this amount does not include the value of the benefit conferred on the victim. Such definition of

components of the restitution equation, the amount taken minus the benefit conferred (*see State v Beavers*, 300 Mont 49, 53, 3 P3d 614, 616 [2000]; *Bowman v State*, 698 So 2d 615, 616 [Fla App 1997]; *State v Tutor*, 538 NW2d 894, 897 [Iowa App 1995]).[3] To hold otherwise would contravene both the words and the intent of the statute, "to prevent the victim from enjoying an unjust enrichment, and the defendant from suffering under an unduly harsh and unreasonable restitution order" (Mem of Attorney General, Bill Jacket, L 1992, ch 618, at 25).

Most often there will be no reductions, as criminals rarely confer a benefit on their victims, and the People may satisfy their burden simply by proof of the amount taken. In this case, however, it is undisputed that the city did receive benefit on the projects for which defendant submitted false invoices. The prosecution, therefore, in making a prima facie showing of the proper restitution amount was required to subtract from the face amount of the improper invoices the value of the benefit conferred in connection with the underlying projects.

Indeed, the prosecution did precisely that with respect to all but two of the falsified invoices. Carl testified that, in determining the restitution amount, she reduced the face value of the invoices by the actual cost of the services rendered by the subcontractors to whom the invoices related. For the Vack and Essex invoices, however, the People failed to introduce any evidence as to the value of defendant's work on those projects, although the DCAS resident engineer had certified that the work was completed when he approved the payment requests. The People might have satisfied that burden by calling a DCAS engineer or other qualified employee to estimate the benefit conferred, or the costs the city might incur for comparable work, but failed to do so.

We agree with the Appellate Division that legislative reform in this area would be useful, and thus echo that Court's call for

out-of-pocket loss is unsupported by both case law and legislative history. We agree with the dissent, however, that, once the People have established a prima facie case of the victim's out-of-pocket loss, the burden of going forward falls to the defendant to offer evidence contradicting the People's calculation (*see id.* § 3-202).

3. Buttressing this conclusion is CPL 400.30 (4)'s mandate that, in seeking a criminal fine, the People must prove the defendant's "gain" by a preponderance of the evidence. Gain is defined as "the amount of money or the value of property derived from the commission of the crime, *less the amount of money or the value of property returned to the victim of the crime*" (Penal Law § 80.00 [2] [emphasis added]). Thus, gain and out-of-pocket loss both contemplate amount taken minus value conferred.

a modification to allow hearing courts the discretion to place the burden of proving offsets on the party best suited to do so—here, undoubtedly, defendant. Until such amendment, however, this burden remains with the prosecution, as plainly specified in the statute. In that the hearing court impermissibly placed the burden on defendant, the Appellate Division correctly concluded that the restitution order must be vacated and the case remitted for a new hearing.

Upon remittal, defendant should be permitted to offer evidence that the work reflected in the invoices was actually done (*see Consalvo*, 89 NY2d at 145 ["At the hearing, the court must permit the defendant to speak on the out-of-pocket loss . . ."]). CPL 400.30 (4) embodies a liberal evidentiary standard and evidence that defendant completed the work for which he requested payment is certainly relevant to the city's out-of-pocket loss. We also agree with the Appellate Division that evidence of the fair market value of the materials or services provided by defendant is not in and of itself irrelevant. If defendant can identify with reasonable certainty the materials or services utilized in completing the projects reflected in the invoices, he should be permitted to introduce fair-market-value evidence in opposition to the People's proof, to be weighed in the competitive-bidding context in which the city contracted for the work at issue.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed.

SMITH, J. (dissenting). I agree with the majority that the burden of proving offsets in a restitution hearing ought to be on the defendant (majority op at 222-223). I do not agree, however, that the Criminal Procedure Law forbids us from placing that burden where it belongs.

The factual issue the court below had to decide was "the actual out-of-pocket loss to the victim caused by the offense" (Penal Law § 60.27 [2]). The hearing to decide that issue was governed by CPL 400.30 (4), which says: "At any hearing held pursuant to this section the burden of proof rests upon the people." I take this to mean that the People bear the burden of proof in two senses—the initial burden of producing evidence and the burden of persuasion—on the issue to be decided at the hearing, the amount of the out-of-pocket loss. (The distinction between the two burdens, both sometimes called "burden of proof," is explained in Fisch, New York Evidence §§ 1086-1088, at 609-612 [2d ed 1977].)

In this case, the burden of persuasion is not in issue; the question is which side had the burden of producing evidence— not on the ultimate issue of the City's out-of-pocket loss, but on the more specific issue of the value of the performance defendant furnished. We all agree that that burden should be on defendant, "the party best suited" to discharge it (majority op at 223), but the majority concludes, wrongly in my view, that the statute places it on the People.

The statute does place on the People the initial burden of producing evidence sufficient to establish a prima facie case on the ultimate issue: If the People fail to produce such evidence at the hearing, the issue must be decided in defendant's favor. But that does not mean the People bear a like burden as to every narrower factual issue that could affect the outcome of the hearing. It is a basic principle that "depending upon the status of the evidence in the record at any particular time, the burden of producing evidence during the trial may shift from one party to the other and back again" (Fisch § 1088, at 611-612; *see e.g. Matter of Philip M.*, 82 NY2d 238, 244 [1993]). A statute placing "the burden of proof" on one party (here, the People) should not be read as repealing this principle.

To take a simple example: Suppose the People produce evidence that a defendant snatched a purse containing $20. Must the People also come forward with evidence showing that the defendant never returned any of the money? Of course not. Once the theft of $20 has been proved, the People have made a prima facie case, and if the defendant wants a finding that he returned some of the money, he must come forward with evidence showing that he did so. Placing this burden upon him does not violate the statute, but merely recognizes that, in showing the theft of $20, the People have discharged the initial burden of producing evidence that the statute places on them.

This case is fundamentally the same. The People produced evidence that defendant had obtained, through false invoices, a sum exceeding $950,000. That established the People's prima facie case. As the hearing judge observed, the People could have stopped there and left it to defendant to produce evidence as to what, if anything, he gave New York City in return for its money. The People, acting with appropriate professionalism, went beyond this, and placed before the hearing court such information as they had about what defendant had provided, thus reducing the restitution amount to $340,143. In doing so, the People were bearing part of defendant's burden for him; while of course

they could not have concealed the information, they could have left the task of putting it into evidence to defendant.

The majority holds that the People had to go farther than they did—that they had to seek out and put before the court proof of all "the benefit conferred" by defendant on the City (majority op at 222). This is evidence favorable to defendant that defendant was in a better position to supply than the People were. In concluding that the statute compels this misallocation of the burden, the majority gives the statute a needlessly broad reading.

Judges CIPARICK, GRAFFEO and PIGOTT concur with Chief Judge KAYE; Judge SMITH dissents in a separate opinion in which Judge READ concurs; Judge JONES taking no part.

Order, insofar as appealed from, affirmed.