**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-2842
_____

KENNEDY NDU EZEIGWE,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A044-202-757)
Immigration Judge: Honorable Andrew A. Arthur

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 17, 2012

Before:  CHAGARES, VANASKIE AND BARRY, Circuit Judges

(Opinion filed:  July 19, 2012)
_____

OPINION
_____

PER CURIAM

    Petitioner Kennedy Ndu Ezeigwe, proceeding pro se, seeks review of a

determination by the Board of Immigration Appeals ("BIA" or "Board") that his New

York state court conviction for identity theft constitutes an aggravated felony, thereby

rendering him ineligible for cancellation of removal. For the reasons that follow, we will deny the petition for review.

I.

Ezeigwe, a native and citizen of Nigeria, entered the United States in 1985. He became a lawful permanent resident in 1993 after he married his wife, a United States citizen. In 1991, Ezeigwe was convicted in New York state court of possession of a forged instrument in violation of New York Penal Law § 170.25. In 2008, Ezeigwe pled guilty to identity theft in violation of New York Penal Law § 190.79(2). Under that provision, a person is guilty of identity theft in the second degree "when he or she knowingly and with the intent to defraud assumes the identity of another person by presenting himself or herself as that other person" and "causes financial loss to such person or to another person or persons in an aggregate amount that exceeds five hundred dollars." N.Y. Penal § 190.79(2).

According to the plea colloquy from the 2008 case, the District Attorney, who was joined by Ezeigwe's criminal attorney, explained to the judge that Ezeigwe could plead guilty to a single count of identity theft on the condition that he waive appeal, pay "restitution of $100,000 by civil judgment," and receive a sentence of one to three years of incarceration. (See Administrative Record ("A.R.") at 656-57.) Following the plea hearing, a probation officer completed a presentence report for the criminal court. The first page of the report, under the heading "SENTENCE," states: "Identity Theft 2, 1-3 yr., Restitution $100,000." (Id. at 841.) The report explains that Ezeigwe opened

accounts at various Washington Mutual Bank branches in Nassau County and, using the identity of victims from California and New York, "negotiated checks that were later returned as being forged, altered and counterfeit." (Id. at 842.) The report concludes that "Washington Mutual Bank sustained a loss of $119,573.37 due to this fraudulent activity in Nassau County." (Id.) Thereafter, Ezeigwe was sentenced to one to three years of imprisonment and ordered to pay $100,000 in restitution.

The Department of Homeland Security subsequently charged Ezeigwe with removability under 8 U.S.C. § 1227(a)(2)(A)(ii), as an alien convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal conduct. As a result of the identity theft conviction, Ezeigwe was also charged under 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony as defined in Immigration and Nationality Act ("INA") sections 101(a)(43)(G) (theft offense for which term of imprisonment is at least one year) and 101(a)(43)(M)(i) (fraud/deceit offense involving victim loss exceeding $10,000).

Ezeigwe conceded his removability under section 1227(a)(2)(A)(ii) and applied for discretionary cancellation of removal under 8 U.S.C. § 1229b(a). The Government argued that Ezeigwe was ineligible for cancellation of removal because his identity theft conviction constituted an aggravated felony. Ezeigwe argued that his conviction was not an aggravated felony because it did not involve a loss of over $10,000 to the victim in his 2008 criminal case.

At an administrative hearing, the Immigration Judge ("IJ") found that Ezeigwe

3

was ineligible for cancellation of removal because the sentencing record demonstrated that his identity theft conviction constituted an aggravated felony. See 8 U.S.C. § 1229b(a). Specifically, the IJ determined that Ezeigwe's conviction met the requirements of both sections 101(a)(43)(G) and 101(a)(43)(M)(i). In finding that the monetary threshold had been satisfied for purposes of §101(a)(43)(M)(i), the IJ relied on the presentence report, which calculated the actual loss to be $119,573.37, and the order of restitution requiring Ezeigwe to pay $100,000. In a June 2011 decision, the BIA dismissed Ezeigwe's administrative appeal and affirmed the IJ's finding that Ezeigwe's identity theft conviction qualified as an aggravated felony. Ezeigwe timely petitioned for review of the Board's decision.

## II.

We have jurisdiction over the final order of removal pursuant to 8 U.S.C. § 1252(a). We exercise plenary review over Ezeigwe's argument that he was not convicted of an aggravated felony. Jeune v. Att'y Gen., 476 F.3d 199, 201 (3d Cir. 2007). "Where, as here, the BIA adopts and affirms the decision of the IJ, as well as provides its own reasoning for its decision, the Court reviews both the decisions of the IJ and the BIA." Hashmi v. Att'y Gen., 531 F.3d 256, 259 (3d Cir. 2008).

## III.

In his petition for review, Ezeigwe first argues that his identity theft conviction does not constitute an aggravated felony because the amount of loss to the victim did not exceed $10,000 and cites Nugent v. Attorney General, 367 F.3d 162 (3d Cir. 2004), in

4

support of the contention. In <u>Nugent</u>, we held that a conviction under 18 Pa. Cons. Stat. Ann. § 3922, Pennsylvania's theft by deception statute, did not constitute an aggravated felony because it involved both "theft" and "fraud and deceit," and thus had to meet the requirements of § 101(a)(43)(M)(i) in addition to meeting the requirements of § 101(a)(43)(G). <u>Id.</u> at 174-75. The alien's offense also had to qualify under § 101(a)(43)(M)(i) because "Congress' intent was for both G and M(i) to apply to an 'offense' involving 'theft' and 'fraud or deceit,' and thus the requirements of both provisions must be fulfilled for such an offense to qualify as an aggravated felony for purposes of the INA." <u>Id.</u> at 176.

We agree with the BIA that Ezeigwe is not entitled to relief under <u>Nugent</u>. Here, there is no dispute that Ezeigwe's identity theft conviction was a fraud conviction requiring the agency to determine whether the victim's loss exceeded $10,000. Although Ezeigwe argues that the loss in his case did not exceed that amount, <u>Nugent</u> is not helpful to him in that regard.

Next, Ezeigwe argues that the IJ and BIA improperly considered the amount of restitution ordered in his case--$100,000--to determine that the loss amount exceeded $10,000. Specifically, he claims that because restitution was in the form of a civil judgment, it was not a part of the criminal judgment and should not have been considered.

The Supreme Court has held that the agency and courts should apply a "circumstance-specific" approach, rather than a categorical approach, to determine

5

whether an alien's crime involved an over $10,000 loss to the victim. Nijhawan v. Holder, 129 S. Ct. 2294, 2302 (2009). In Nijhawan the alien had stipulated at sentencing that the loss to the victim exceeded $100 million. Id. at 2298. The Supreme Court determined that it was not unfair for the IJ to refer to that sentencing-related material to determine whether that the conviction constituted an aggravated felony. Id. at 2303. We previously determined that "[t]he amount of restitution ordered as a result of a conviction may be helpful to a court's inquiry into the amount of loss to the victim if the plea agreement or the indictment is unclear as to the loss suffered," Munroe v. Ashcroft, 353 F.3d 225, 227 (3d Cir. 2003).

In the state of New York, restitution is "the sum necessary to compensate the victim for out-of-pocket losses" while "[preventing] the victim from enjoying unjust enrichment." People v. Tzitzikalakis, 864 N.E.2d 44, 46-47 (N.Y. 2007) (internal quotation marks and citations omitted). Ezeigwe argues that the IJ's consideration of the judgment of restitution, because it was entered as a civil judgment, was akin to considering amounts associated with dismissed charges. See Alaka v. Att'y Gen., 456 F.3d 88, 105-06 (3d Cir. 2006). In Alaka, the petitioner pleaded guilty to one count of bank fraud which involved a loss of about $4,000. Id. at 92. The sentencing court included the loss amount from two dismissed charges to find the intended loss to be $47,969. Id. We determined that the loss tied to the dismissed charges was improperly considered in the analysis of whether Alaka's conviction was an aggravated felony. Id. at 106.

6

After reviewing the record and the parties' arguments, we conclude that the agency's decision does not run afoul of Alaka. Alaka requires the fact-finder to "focus narrowly on the loss amounts that are particularly tethered to the convicted counts." Id. at 107 (quoting Knutsen v. Gonzales, 429 F.3d 733, 739-40 (7th Cir. 2005)); see also Doe v. Att'y Gen., 659 F.3d 266, 275 (3d Cir. 2011). Here, the agency considered only the conviction and sentencing materials related the charge to which Ezeigwe pled guilty. We are not persuaded by Ezeigwe's argument that "civil judgment restitution is non-criminal restitution and therefore should not render [him] ineligible for relief." (Petitioner's Brief on Appeal ("Pet. Br.") at 5.) Ezeigwe does not provide any support for his contention that the ordered restitution was purely "civil" in nature or unrelated to the conduct that led to his conviction.

New York Penal Law § 60.27(1) makes it clear that "the court shall consider restitution or reparation to the victim of the crime and may require restitution or reparation *as part of the sentence imposed* upon a person convicted of an offense." N.Y. Penal Law § 60.27(1) (emphasis added). New York Criminal Procedure Law § 420.10(6) directs that an order of restitution be entered by the county clerk in the same manner as a judgment in a civil action. N.Y. Crim. Proc. Law § 420.10; see also People v. Miller, 928 N.Y.S. 2d 806, 809 (N.Y. App. Term, 2011) (observing that the order to docket a fine as a civil judgment under § 420.10(6) was a "mere ministerial matter" required by statute).

We agree with the Government that although Ezeigwe's restitution order operates

7

as a civil judgment for enforcement purposes, it does not change the underlying criminal nature of the restitution. Ezeigwe does not dispute that he agreed to pay restitution in the amount of $100,000 at the plea hearing. Indeed, that amount is consistent with the amount of loss sustained by Washington Mutual Bank as identified in the presentence report. We are therefore satisfied that the loss amount was tethered to the actual conviction in this case. Alaka, 456 F.3d at 107.

Finally, Ezeigwe argues that the plea agreement in his case clearly states that Washington Mutual Bank suffered a loss of only $2,000. (Pet Br. at 4.) In Singh v. Att'y Gen., 677 F.3d 503 (3d Cir. 2012), we recently determined that an order of restitution for $54,000 did not establish that the victim suffered an actual loss of over $10,000 because, inter alia, the restitution order conflicted with undisputed facts in the sentencing record showing that a government sting operation made any loss to the victim impossible.

As an initial matter, contrary to Ezeigwe's assertion, the plea agreement is not a part of the record and the IJ did not consider it. Although the criminal information, to which Ezeigwe may be referring, indicates that he caused Washington Mutual Bank financial loss "in [an] aggregate amount that exceed[s] two thousand dollars," A.R. at 615, its reference to a loss *exceeding* $2,000 does not evince that Washington Mutual Bank suffered a loss of *only* $2,000. On the other hand, as mentioned, the order of restitution is consistent with the presentence report in the record which states that Ezeigwe caused Washington Mutual Bank to lose $119,573.37. Thus, Ezeigwe has not "pointed to undisputed facts in the sentencing material[s] that undermine the restitution

8

order's reliability as a measure of loss." <u>Singh</u>, 677 F.3d at 515.

In sum, Ezeigwe's arguments do not persuade us that the agency erred in determining that he had been convicted of an aggravated felony and therefore was ineligible for cancellation of removal.

Accordingly, we will deny the petition for review. Ezeigwe's motion for appointment of counsel is denied. <u>Tabron v. Grace</u>, 6 F.3d 147, 155-56 (3d Cir. 1993). Ezeigwe's motion to lift the stay of removal is denied as moot.

9