The People of the State of New York, Respondent,
against
Brendon McGahan, Appellant.




Rizzo And Kelley, Esqs., (James P. Kelley of counsel), for appellant.
Dutchess County District Attorney, (Kirsten A. Rappleyea of counsel), for respondent.

Appeal from a judgment of the City Court of Poughkeepsie, Dutchess County (Frank M. Mora, J.), rendered June 14, 2016. The judgment convicted defendant, upon a jury verdict, of assault in the third degree and imposed sentence, including a direction, after a hearing, that defendant pay restitution in the sum of $7,283.65.




ORDERED that the judgment of conviction is modified, on the facts, by reducing the amount of restitution to be paid to the sum of $7,159.81; as so modified, the judgment of conviction is affirmed.
Defendant was charged with assault in the third degree (Penal Law § 120.00 [1]). The victim, defendant's wife, testified at a jury trial that, on Easter Sunday, April 20, 2014, she, defendant and her family were at home and going to the home of her sister for dinner. When the victim took defendant's car key, defendant grabbed her left arm and twisted it behind her back. The victim explained that defendant knew that she had limited mobility in her left arm because of her prior medical condition. Defendant punched the victim twice in the face and then threw her across the room. As a result, her head hit the carpeted cement floor. The punches "hurt a lot." The degree of "hurt" was "substantial." Due to the victim's medical condition, artificial tear ducts had been implanted in her eyes. When defendant punched her, an artificial duct came out of her left eye. When defendant's mother saw the victim, she tried to get the victim's nose to stop bleeding, adjusted a bracket in the victim's mouth, and put ice on the victim's face. 
Several photographs of the victim that had been taken by a forensic nurse on April 28, 2014 were admitted into evidence. The victim testified that the photographs showed that her face was bruised and that her eye was swollen, bruised and red. Her right arm and back were also bruised. The house had a video camera that had been running during the incident. A compact disc of the video, which was admitted into evidence, depicted portions of the incident, including defendant putting the victim's arm behind her back and throwing her to the floor, and the victim holding what appears to be a paper towel to her face with blood on it. The video also showed [*2]that the victim had slapped defendant.
The victim further testified that she did not see a doctor or go to a hospital. The next morning, the victim went to work. Later that day, she went to the Poughkeepsie Police Station to report the incident but declined to press charges. 
City of Poughkeepsie Police Officer Jeffrey Lee testified, among other things, that on April 21, 2014, the victim told him that defendant had assaulted her. Lee wrote on a form that no injuries were visible. On April 28, 2014, the victim returned to the police station.
Defendant's mother testified on behalf of defendant that, on April 20, 2014, she saw that the victim was visibly upset, but the victim's eyes and face were not bleeding. There was no bruising or swelling to the victim's face. The prosecutor had the video played in court. Defendant's mother agreed that it showed the victim on the floor and also depicted a paper towel with a spot of blood on it, which the victim held to her nose. The prosecutor showed defendant's mother five of the photographs that had been admitted into evidence. When she was asked if she saw "a bruise," she replied, "I do."
Defendant's sister, who was at the Easter dinner, testified that the victim did not have any bruises, swelling, or redness in her eyes, and had no blood on her face. When the prosecutor showed her one of the photographs that had been admitted into evidence, she testified that it depicted a bruise on the victim's right arm.
Defendant testified that the victim did "not have much in the way of issues" with her left arm based on her medical condition. He denied that he had punched the victim or twisted her left arm. He asked her for his car key because he believed it was not safe for the victim to drive, as she was taking medication. Defendant and the victim were "going back and forth a little bit" while defendant tried to get the car key. The victim hit him twice in the face. He raised his hand "to swat her hands away." While struggling for the key, the victim tripped over a bag of clothing. Defendant pushed her aside.
During cross-examination, the prosecutor started and stopped the video and asked defendant a series of "can we agree" and do you "disagree" questions. The prosecutor asked defendant, "[c]an you and I agree . . . that you are twisting your wife's left arm?" Defendant replied, "[n]o, we cannot agree on that. My wife has her key in that hand and she is trying to get it away from me. That's my key."
Defendant's counsel requested a justification charge, arguing that there was a reasonable view of the evidence that defendant was not the initial aggressor, that the victim had used physical force, and that defendant "was able to use physical force in return." The prosecutor opposed the request, arguing, in essence, that defendant was the initial aggressor and that the victim had slapped him because he had been hurting her. The court denied the request for a justification charge.
The jury found defendant guilty of assault in the third degree. A restitution hearing pursuant to Penal Law § 60.27 was subsequently conducted upon the consent of the parties.
The victim testified with respect to her out-of-pocket expenses as a result of defendant's actions. She had prepared a spreadsheet detailing her expenses. She saw two eye surgeons on April 29, 2014 and in July 2014, respectively, to reposition the artificial tear duct that had dislodged during the incident. Her expenses for those doctors totaled $466.66. However, during cross-examination, the victim testified that these payments had been made prior to the date of the [*3]incident. Between April 29, 2014 and August 1, 2014, she paid $438.13 in deductibles and co-payments with respect to medical care for her eye. On April 13, 2015, she saw another eye doctor with respect to the artificial tear duct. Her expenses for that visit were $115. On December 17, 2015, she incurred $592.75 in expenses for another eye procedure.
The victim incurred expenses for mental health services and trauma counseling. She saw a licensed clinical social worker and mental health counselor for "trauma related complications from April 20" on five occasions in September and October 2015, incurring expenses of $83.74 for the first visit, and $45.09 for each of the remaining four visits, which totaled $264.10. The victim also saw a psychologist 30 times, paid her $926.69, and still owed her $4,000. She saw another psychologist between October 12, 2015 and April 11, 2016, who provided the victim with "Eye Movement Desensitization and Reprocessing" therapy for trauma. Her expenses totaled $1,180.84. The victim also saw two psychiatrists in connection with an evaluation for the Family Court.
The victim saw her primary care doctor for prescriptions and follow-up eight times between April 2015 and May 2016. Her expenses for those visits were $686.44. The victim saw a plastic surgeon, because her eye doctors wanted "a consult" to see if her eye could be "fix[ed]." The doctor was unable to do so. The cost of the consultation was $143.52. The costs for the victim's prescription drugs was $253.13.
During cross-examination, the victim admitted that she had lost custody of her children to her husband on September 8, 2015. The Family Court had ordered her to see a therapist. She agreed "that $750 was charged for a report." Defendant's counsel asked the victim if any of her medical claims were "for mental health treatment prior to losing [her] kids." She replied that there were visits to a licensed mental health social worker between August 22, 2015 and September 13, 2015, for mental health treatment prior to losing custody of her children, for which she had incurred expenses of $3,750.
The victim further testified that the "treatment planning and scope of service for all therapeutic interventions" were related to the April 20, 2014 assault. There may have been "concurrent integration of conversations around the complications that were occurring in Family Court, but they were not because of what happened in Family Court," or because that court had ordered her to see those therapists. The victim testified that she had seen a social worker "for mental health services" as "a result of the trauma that [she] suffered after April 20, 2014," on August 22, 2014 and November 17, 2014. She did not see her again until April 27, 2015 because she ran out of money.
The City Court determined that:
"After hearing the testimony, viewing the demeanor and the credibility of the witness, after adding up and looking at all of the documentation that is in evidence, and deducting for those items that were pre-incident, and deducting the Family Court ordered counseling, I find that there is restitution in the amount of $7,283.65."
On appeal, defendant contends that his guilt of assault in the third degree was not proven beyond a reasonable doubt, as the People presented insufficient evidence of physical injury. In the alternative, the verdict of guilt was against the weight of the evidence. There were no objective indicia of injury, no testimony regarding the duration or degree of the victim's pain, and no evidence that she had sought medical treatment. She went to work the next day. Defendant [*4]also argues that, during cross-examination, the prosecutor improperly asked a series of "you agree" or "disagree" questions. Defendant further contends that the trial court erred in denying his request for a justification charge. Finally, defendant argues that the court-ordered restitution included expenses unrelated to the victim's injuries and the incident.
The People contend that defendant's claim of insufficient evidence of physical injury is unpreserved for appellate review, as he did not seek dismissal at trial on that ground. In any event, the evidence, viewed in the light most favorable to the prosecution, established defendant's guilt of assault in the third degree beyond a reasonable doubt, and the verdict of guilt was not against the weight of the evidence. With respect to the denial of a justification charge, the People contend that there is no reasonable view of the evidence which would permit the jury to conclude that the victim had been the initial aggressor and had used physical force against defendant. Finally, with respect to restitution, the People argue that the City Court explicitly deducted expenses incurred before April 20, 2014 and expenses for counseling mandated by the Family Court which coincided with her loss of custody of her children.
Defendant's motion to dismiss the charge of assault in the third degree was based only on a claim of insufficient evidence that defendant was the perpetrator. Thus, his contention regarding the lack of evidence of physical injury is unpreserved for appellate review (see CPL 470.05 [2]; People v Kolupa, 13 NY3d 786, 787 [2009]; People v Hawkins, 11 NY3d 484, 492 [2008]; People v Gray, 86 NY2d 10, 19 [1995]). This contention is unpreserved on the additional ground that defendant presented evidence after his unsuccessful motion to dismiss and did not renew it at the close of all of the proof (see People v Lane, 7 NY3d 888, 889 [2006]; People v Fisher, 89 AD3d 1135, 1136 [2011]). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621 [1983]), we find that it was legally sufficient to establish defendant's guilt of assault in the third degree beyond a reasonable doubt. 
Penal Law § 120.00 (1) provides that a "person is guilty of assault in the third degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person." Penal Law § 10.00 (9) defines "physical injury" as "impairment of physical condition or substantial pain." Here, the evidence was sufficient to establish that the victim had sustained a physical injury. Defendant grabbed his wife's left arm and twisted it behind her back, which was very painful. Defendant also punched her in the face twice. He threw her, and her head hit the carpeted cement floor. An artificial tear duct in her eye became dislodged. Her face was bloody. She needed a paper towel to stop the bleeding from her nose. 
Pain is a subjective matter, and deciding whether the "substantial pain" threshold has been met is generally for the trier of fact. While "slight or trivial pain" is insufficient, the "[p]ain need not, however, be severe or intense to be substantial" (People v Chiddick, 8 NY3d 445, 447 [2007]). "Each case ultimately turns upon the facts unique thereto, with a variety of relevant factors, including, among others, the injury viewed objectively, the victim's subjective description of the injury and her pain, and whether the victim sought medical treatment" (People v Rivera, 42 AD3d 587, 588 [2007]). Here, defendant's acts would normally be expected to cause more than slight or trivial pain. While the victim did not go to a hospital for treatment, and only saw a doctor to re-insert her artificial tear duct, there is no requirement that a victim seek hospital or medical treatment to meet the substantial pain standard (see People v Guidice, 83 [*5]NY2d 630, 636 [1994]). The photographs admitted into evidence showed that the victim had redness and bruises to her face, arms, and back eight days after the incident.
In exercising its factual review power (see CPL 470.15 [5]; People v Danielson, 9 NY3d 342, 348 [2007]), this court must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences to be drawn from the testimony. We find that the verdict of guilt was not against the weight of the evidence.
In considering whether a justification charge is warranted, a court must view the record in the light most favorable to the defendant and "determine whether any reasonable view of the evidence would permit the factfinder to conclude that the defendant's conduct was justified. If such evidence is in the record, the court must provide an instruction on the defense" (People v Petty, 7 NY3d 277, 284 [2006]; see People v McManus, 67 NY2d 541, 549 [1986]; People v Padgett, 60 NY2d 142, 144-145 [1983]; People v Brown, AD3d , 2018 NY Slip Op 01173, * 3-4 [1st Dept 2018]; People v Singh, 139 AD3d 761, 762 [2016]). 
Penal Law § 35.15, entitled "Justification; use of physical force in defense of a person," authorizes the use of ordinary physical force to the extent that a person believes it is necessary to defend against the use or imminent use of unlawful physical force, and that a reasonable person would have the same belief under the circumstances (Penal Law § 35.15 [1] [b]; see Matter of Y.K., 87 NY2d 430, 433-434 [1996]; People v Powell, 101 AD3d 1369, 1373 [2012]). Here, by his own testimony, defendant admitted that he had grabbed his wife's left hand in an attempt to get the car key, and that they were going "back and forth" together before the victim slapped him. This testimony established that he was the initial aggressor. In any event, under the circumstances presented in this case, a reasonable person would not believe that he could use physical force in the manner that defendant did to defend against two slaps. Thus, the justification defense was not available to defendant (see Penal Law § 35.15 [1] [b]; People v Petty, 7 NY3d at 285).
The amount of restitution to be paid must be established by a preponderance of the evidence (see People v Tzitzikalakis, 8 NY3d 217, 221 [2007]). In this case, the court did not explain how it arrived at its restitution amount of $7,283.65. Based on the victim's testimony at the restitution hearing, we find that the amount of restitution should be reduced to $7,159.81. The sum of $438.13 was paid for eye care between April 29, 2014 and August 1, 2014. She expended $115 for an April 13, 2015 visit to an eye doctor and paid $592.75 for an eye procedure on December 17, 2015. She testified that she spent $3,750 for mental health treatment unrelated to the victim losing custody of her children. She paid $1,180.84 to a doctor for "Eye Movement Desensitization and Reprocessing Therapy" for trauma between October 2015 and April 2016. She paid her primary care doctor $686.44 for anxiety and trauma-related medical issues between April 2015 and May 2016. She paid a plastic surgeon $143.52 for a consultation with respect to her eye. Finally, her expenses for prescription drugs were $253.13. Adding these eight amounts results in a total of $7,159.81.
The victim also testified that she had spent $466.66 with respect to her eye, but those payments had been made prior to the date of the incident. During cross-examination, she testified that, with respect to the custody of her children, the Family Court had directed her to see a therapist, and, after the therapist left the practice, she saw a psychologist. She had paid the therapist $264.10, and had paid the psychologist $926.69. She testified that she still owed the [*6]psychologist $4,000. However, we find that these expenses were not related to the April 20, 2014 incident.
Accordingly, the judgment of conviction is modified by reducing the amount of restitution to be paid to the sum of $7,159.81.
BRANDS, J.P., MARANO and RUDERMAN, JJ., concur.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: May 03, 2018