(April 30, 2009)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN T. WILSON, Appellant. [877 NYS2d 761]—

Cardona, P.J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered May 9, 2006, upon a verdict convicting defendant of the crime of manslaughter in the second degree.

During the early morning hours of September 10, 2005, the victim arrived in an intoxicated state at a party held in an apartment in the City of Troy, Rensselaer County, with the expressed purpose of retrieving a shotgun that allegedly belonged to him.

Defendant, a close friend of the victim, and another individual, identified as Johnny Falu, both attended the same party and were in possession of shotguns. According to witnesses, defendant and Falu argued about the ownership of the shotgun carried by Falu. The victim then asked defendant if he could speak to him and the two men entered a small bathroom in the apartment. Shortly thereafter, Falu joined them in the bathroom and closed the door. Witnesses then heard "yelling, arguing" and scuffling noises that sounded "[l]ike somebody was fighting." Finally, they heard the sounds of at least one gunshot.[1] It is undisputed that the victim was shot in the head with the shotgun carried by defendant and the victim died at the scene. Defendant and Falu fled the apartment and, while defendant initially hid the weapon and lied about his involvement in the shooting, he later led the police to the shotgun's location. He also gave a statement setting forth, among other things, that he "accidentally killed one of [his] best friends" when he pulled the trigger of a shotgun that was not supposed to fire "because the safety was supposed to be on."

Thereafter, an indictment was handed up charging defendant with one count of depraved indifference murder in the second degree. Following all the proof at trial, County Court, in its instruction, also charged to the jury the lesser included offenses of manslaughter in the second degree and criminally negligent homicide. Defendant was acquitted of depraved indifference murder, but found guilty of manslaughter in the second degree. He was sentenced to a prison term of 5 to 15 years, prompting this appeal.

Initially, defendant maintains that the jury's verdict as to manslaughter in the second degree was against the weight of the evidence. We do not agree. Assuming arguendo that "an acquittal on this particular charge would not have been unreasonable, we must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" (*People v Baker*, 58 AD3d 1069, 1071 [2009] [internal quotation marks and citation omitted]; *see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342, 348 [2007]; *People v Richardson*, 55 AD3d 934, 935 [2008], *lv dismissed* 11 NY3d 857 [2008]). In conducting that review, the evidence is viewed in a neutral light and we accord deference to

---

1. Notably, while witnesses remember hearing only one gunshot, the record demonstrates that two were actually fired, one from each weapon, apparently in relatively quick succession. Along with the shot from defendant's weapon that ended the victim's life, Falu also shot himself in the foot with the shotgun he was carrying.

the jury's credibility determinations (*see People v Collins*, 56 AD3d 809, 810 [2008], *lv denied* 11 NY3d 923 [2009]).

Here, the evidence showed that the victim, while intoxicated, engaged in a heated argument with Falu as to the ownership of a shotgun. Although the witnesses indicated that the argument did not appear to be between defendant and the victim, the proof, nevertheless, showed that defendant participated in the discussion while carrying a loaded weapon. Forensic proof established that this weapon was next to the victim's head at the time it discharged. Moreover, defendant, in his statement to the police, admitted he pulled the trigger of that gun. While he also indicated he pulled the trigger under the mistaken belief that the safety was engaged, he further acknowledged an awareness that various guns have different, potentially confusing, types of safeties.[2] Contrary to defendant's argument, the proof submitted by the People cumulatively supports a finding that defendant acted recklessly in "consciously disregard[ing] a substantial and unjustifiable risk" (Penal Law § 15.05 [3]; *see* Penal Law § 125.15 [1]) and, further, that the verdict was not against the weight of the evidence.

Next, defendant asserts that County Court erred in denying his postsummation motion seeking to dismiss the indictment on the basis that, during the course of the prosecutor's summation, the People allegedly changed their theory of the case from depraved indifference murder, as charged in the indictment, to that of intentional murder, which was unsupported by the evidence in the record.[3] While it is a fundamental right that a defendant "be tried and convicted of only those crimes and upon only those theories charged in the indictment" (*People v McCallar*, 53 AD3d 1063, 1064 [2008], *lv denied* 11 NY3d 833 [2008] [internal quotation marks and citations omitted]), here, we conclude that defendant received appropriate notice of the

---

**2.** Defendant indicated in his statement, "This safety was different so the gun went off when I thought it wouldn't. Some safet[ies] you cover the red and it is safe and some other safet[ies] you see the red and [it's] safe. This happened because I made a mistake about the safety on the gun."

**3.** While defendant clearly argues in his brief that the People allegedly altered their theory of prosecution during summation, not during the presentation of proof, we note that he cites to certain cases where prosecutors impermissibly presented evidence that differed from that set forth in the indictments (*see e.g. People v Greaves*, 1 AD3d 979, 980 [2003]). Nevertheless, defendant acknowledges that the People did not set forth any proof as to defendant's mental state. In fact, defense counsel did not seek to dismiss the indictment on the basis of changed theory until after the prosecutor's summation and, further, specifically argued in support of that motion that the basis thereof was the prosecutor's alleged error in arguing during summation a theory based on evidence different than that pleaded and presented at trial.

accusation against him (*see id.*), and the prosecutor did not commit reversible error in his summation.

Significantly, defendant primarily takes issue with the prosecutor's remarks to the effect that the shooting was "not an accident" and, instead, defendant "deliberate[ly]" put a loaded shotgun to his friend's head in a tiny room where tempers were flaring and pulled the trigger. However, the fact that defendant affirmatively pulled the trigger is an appropriate characterization of defendant's own admission that he did so, regardless of the claimed mistake regarding the safety mechanism that is fully set forth in the statement submitted into evidence by the People. Moreover, it is apparent that the prosecutor's remarks regarding defendant's affirmative conduct were in large part a fair comment in response to defense counsel's contention in his summation that the shooting was merely a tragic "accident." To the extent that certain of the prosecutor's comments, particularly those speculating about defendant's knowledge of the operation of gun safety mechanisms, could be construed as exceeding the bounds of fair comment, we conclude that those remarks "did not substantially prejudice defendant's trial when viewed in the context of the entire summation and, even more, the entire trial" (*People v Lockhart*, 12 AD3d 842, 845 [2004], *lv denied* 4 NY3d 800 [2005] [internal quotation marks and citation omitted]). Not only did County Court properly instruct the jury with the charged crime, as well as the lesser included offenses, the jury's rejection of the more severe charge refutes defendant's argument that the jury was inflamed or confused by the prosecutor's closing remarks. Thus, we conclude that any error in some of the comments was "not so egregious or prejudicial as to deprive defendant of a fair trial and did not operate to detract the jury from the issue of his guilt of the crimes charged" (*People v Riback*, 57 AD3d 1209, 1214 [2008]).[4]

Finally, we are unpersuaded by defendant's assertion that his sentence to a prison term of 5 to 15 years was unduly harsh and excessive. Given the facts of this case and defendant's criminal history, we find "neither an abuse of discretion nor the exis-

---

4. We are similarly unpersuaded that defendant was entitled to a mistrial as the result of remarks made by the prosecutor during the summation as to whether the victim was upright or prone at the time of the shooting based upon the location of certain blood splatters on a wall. Although defense counsel argued, among other things, that the prosecutor was attempting to imply an intentional murder by doing so, County Court aptly noted that since defendant admitted pulling the trigger, it did not matter whether the victim was laying down or upright when he was shot; the only relevant issue concerned "defendant's statement indicat[ing] he thought the safety was on."

tence of any extraordinary circumstances warranting a reduction of the sentence in the interest of justice" (*People v Barringer*, 54 AD3d 442, 444 [2008], *lv denied* 11 NY3d 830 [2008]).

Defendant's remaining contentions have been examined and found to be unpersuasive.

Mercure, Rose, Malone Jr. and Kavanagh, JJ., concur. Ordered that the judgment is affirmed.