People v Poulin (2018 NY Slip Op 01357)





People v Poulin


2018 NY Slip Op 01357


Decided on March 1, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 1, 2018

107420

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
RORY POULIN, Appellant.

Calendar Date: January 12, 2018

Before: Garry, P.J., McCarthy, Egan Jr., Lynch and Pritzker, JJ.


James A. Caruso, Troy, for appellant.
Joel E. Abelove, District Attorney, Troy (Katy M. Moryl of counsel), for respondent.


Lynch, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Rensselaer County (Ceresia, J.), rendered September 12, 2013, upon a verdict convicting defendant of the crime of manslaughter in the second degree.
On the evening of December 3, 2011, defendant's girlfriend (hereinafter the victim) died from a gunshot wound to the head. As a result of the incident, defendant was charged by indictment with murder in the second degree, manslaughter in the first degree, manslaughter in the second degree, criminally negligent homicide and criminal possession of a weapon in the third degree. Following a jury trial, defendant was convicted of manslaughter in the second degree, but acquitted of murder in the second
degree and criminal possession of a weapon in the third degree [FN1]. He was thereafter sentenced to a prison term of 5 to 15 years. Defendant now appeals.
Defendant's core argument on appeal is that the trial evidence was legally insufficient to support the manslaughter conviction because the evidence demonstrated that he did not know [*2]that the shotgun was loaded. Where, as here, the legal sufficiency of a verdict is challenged, we view the evidence in the light most favorable to the People and assess whether "there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Reed, 22 NY3d 530, 534 [2014] [internal quotation marks and citations omitted]). As relevant here, a person is guilty of manslaughter in the second degree when "[h]e [or she] recklessly causes the death of another person" (Penal Law § 125.15 [1]). "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he [or she] is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]).[FN2]
The incident took place in the home that defendant shared with the victim. Two friends were also present, Charles Lott and Cheryl Pangborn. With the exception of Lott, the group had been drinking throughout the day. Just prior to the shooting, defendant went upstairs and returned carrying a .12-gauge shotgun. The victim was sitting on a couch with Pangborn, who had fallen asleep. Lott testified that he told defendant to "[g]o put [the gun] back," but defendant "plop[ped]" down on a futon next to the victim and the gun went off "[a]s soon as [defendant] s[at] down." Both Lott and Pangborn, who was awakened by the gunshot, testified that defendant screamed words to the effect, "Oh, my God what did I do? I [just] killed my [girlfriend]." Pangborn confirmed that defendant appeared to be in a state of shock and had a look of absolute disbelief on his face. Lott took Pangborn outside and called 911. The responding police officers described defendant as disheveled and crying. Upon inquiry, defendant stated, "I shot my girlfriend." A video recording of defendant's interrogation at the police station, which lasted more than five hours, was played for the jury at trial. During this interrogation, defendant essentially explained that he had been arguing with the victim, that he went upstairs to retrieve the shotgun and that he wanted to scare the victim, so he pointed the shotgun at her head and pulled the trigger. He repeatedly stated that he did not know the shotgun was loaded. Defendant, who was familiar with guns, acknowledged that he did not check to see if the shotgun was loaded and that he should not have pointed it at the victim. He explained that he had not used the shotgun in approximately 10 years and knew that others had access to the shotgun. He admitted feeling tension on the trigger and "figured it had been cocked" — but not by him. He conceded that he pulled the trigger knowing "that it had a 50/50 chance of going off." Defendant also signed a two-page statement prepared by the investigators who conducted the interrogation, in which he acknowledged pointing the shotgun at the victim's head and pulling the trigger.
Although Lott's testimony is supportive of an accidental shooting, the jury could readily determine that defendant's own account of the incident shows otherwise. Even accepting defendant's statement that he did not know that the shotgun was loaded, he confirmed that he pointed the shotgun at the victim's head and pulled the trigger, recognizing that there was a real risk it would fire. He knew that there was tension on the trigger, indicating it had been cocked, and yet failed to confirm that it was not loaded. In our view, a jury could reasonably conclude [*3]from these statements that defendant was aware of and consciously disregarded a substantial and unjustifiable risk that the weapon would discharge.
This is all the more so given the testimony of the People's expert, Michael Sikirica, the Rensselaer County Medical Examiner, who performed an autopsy on the victim. From the evidence of powder and soot at the site of the fatal wound, Sikirica testified "that the gun was pushed, at least loosely, against her skull when it went off" — an assessment that discounts Lott's version of the event. While defendant's expert, Cyril Wecht, a physician, testified that the absence of a red discoloration on the victim's skin and the configuration of soot indicated the gun was some six inches from the victim's head, it was for the jury to assess the distinction between the two medical opinions. In our view, the verdict is based upon legally sufficient evidence (see People v Peters, 126 AD3d 1029, 1030 [2015], lv denied 25 NY3d 991 [2015]; People v Wilson, 61 AD3d 1269, 1271 [2009], lv denied 14 NY3d 774 [2010]).
Next, defendant maintains that County Court erred by admitting into evidence two photographs depicting the victim's deceased body, one at the scene and one from the autopsy, contending their prejudicial impact outweighed their probative value. The general rule with respect to photographs of a victim's deceased body is that they "are admissible if they tend to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered . . . [and] should be excluded only if their sole purpose is to arouse the emotions of the jury and to prejudice the defendant" (People v Wood, 79 NY2d 958, 960 [1992] [internal quotation marks, emphasis and citation omitted]). Even accepting defendant's description of the photographs as graphic,[FN3] County Court found, and we agree, that the photographs were relevant with respect to establishing the distance between the gun and the victim when the discharge occurred, and thus were relevant to the manner in which the shooting occurred. Moreover, County Court properly instructed the jury to refrain from making an emotional judgment based on the photographs. As such, the court did not abuse its discretion by admitting the photographs into evidence (see People v Wood, 79 NY2d at 960; People v Ford, 43 AD3d 571, 574 [2007], lv denied 9 NY3d 1033 [2008]; People v Alvarez, 38 AD3d 930, 931 [2007], lv denied 8 NY3d 981 [2007]).
We are not persuaded by defendant's contention that County Court erred in charging the jury as to the import of a mistake in fact, i.e., that defendant erroneously believed the shotgun was not loaded. The court tailored its charge pursuant to Penal Law § 15.20, advising the jury that a mistaken belief of fact does not relieve a defendant of criminal liability unless "such factual mistake, reasonable or unreasonable, negatives the culpable mental state required for the commission of the offense" (see Penal Law § 15.20 [1] [a]). Contrary to defendant's argument, this charge does not superimpose a reasonableness requirement on the defense (compare People v Gudz, 18 AD3d 11, 14-16 [2005]). The court further clarified that the defense applied to each charge and did not shift the burden of proof to defendant. As discussed above, the fact that defendant mistakenly believed the gun was not loaded did not preclude a finding of recklessness for purposes of proving manslaughter in the second degree. In our view, the charge as given was [*4]appropriate.
Defendant's contention that the jury's verdict was repugnant given the acquittal on the charge of criminal possession of a weapon in the third degree was not preserved for our review through an appropriate, timely objection before the jury was discharged (see People v Keener, 152 AD3d 1073, 1074-1075 [2017]). The contention, in any event, is unavailing because the weapon possession charge, as charged to the jury, included an element of intent not found in the manslaughter count (see Penal Law §§ 265.01 [2]; 265.02 [1]; People v Elmy, 117 AD3d 1183, 1184 [2014]; People v Malave, 52 AD3d 1313, 1314 [2008], lv denied 11 NY3d 790 [2008]).
Finally, in accord with the discussion above, we find no error in County Court's denial of defendant's CPL 330.30 motion to set aside the verdict.
Garry, P.J., McCarthy, Egan Jr. and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: County Court dismissed the charge of manslaughter in the first degree upon defendant's motion for a trial order of dismissal. The jury did not render a verdict on the charge of criminally negligent homicide due to County Court's instruction that it should decline to deliberate on this charge should it find defendant guilty of manslaughter in the second degree.

Footnote 2: Although the statute further addresses the impact of voluntary intoxication, and there was ample evidence demonstrating that defendant consumed alcohol prior to the incident, County Court granted defendant's application not to charge the jury regarding the defense of intoxication.

Footnote 3: These photographs were not made a part of the record on appeal. Upon inquiry by the Court, the People affirmed that they were unable to locate the original trial exhibits. That said, even without actually viewing the photographs, we can resolve this issue on the merits under the "sole purpose" rule reiterated in People v Wood (79 NY2d at 959-960). Defendant has made no argument to the contrary.